STANDING COMMITTEE ON DISCIPLINE of the UNITED STATES DISTRICT COURT for the CENTRAL DISTRICT OF CALIFORNIA, Petitioner,

v.

Stephen YAGMAN, Respondent.

No. CV 92–6448 ER, JGD, DWW.

United States District Court, C.D. California.

July 8, 1994.

Robert F. Lewis, Graham E. Berry, Michael Silk, Matthew D. Berger, of Lewis, D'Amato, Brisbois & Bisgaard, Los Angeles, CA, for petitioner.

Ramsey Clark, New York City, Marion Yagman, Yagman & Yagman, Venice, CA, for respondent.

---

Before RAFEEDIE, District Judge, DAVIES, District Judge, and WILLIAMS, Senior District Judge.

## MEMORANDUM OPINION REGARDING SANCTION

### PER CURIAM:

On May 18, 1994, this Panel issued its Findings of Fact, Conclusions of Law, and Order Thereon (hereinafter "Findings of Fact"), holding that Respondent violated Local Rule 2.5.2 by impugning the integrity of the court and by interfering with the random assignment of cases to the judges of this court. In essence, Respondent attempted to reduce the pool of judges to whom his cases could be assigned by. publicly making false and inflammatory statements, including charges of anti-Semitism, drunkenness, and dishonesty, about Judge William D. Keller. Respondent hoped that .such accusations would compel the Judge to recuse himself to avoid an appearance of impropriety. Respondent confessed this purpose to witness Robert Steinberg.[1]

We requested further briefing on what sanction should be levied, including the question of the criteria that should be considered in determining the sanction. Findings of Fact at 26. The parties filed supplemental briefs and did not request an oral hearing.

### I. The Standard

Local Rule 2.6.8 provides for a wide range of disciplinary sanctions for attorneys found guilty of unprofessional conduct. Sanctions may include disbarment, suspension, public or private reproval, and/or monetary penalty. However, the Local Rules do not set forth a standard for determining the appropriate sanction.

The Standing Committee urges us to apply eight criteria set forth in Charles W. Wolfram's treatise *Modern Legal Ethics.*[2] Respondent takes no position as to the appropriate standard.

While Wolfram's criteria are instructive, we observe that both the American Bar Association and the State Bar of California have promulgated standards for the imposition of sanctions. *See* American Bar Association, Standards for Imposing Lawyer Sanctions (as amended in 1992); State Bar of California, Standards for Attorney Sanctions for Professional Misconduct (adopted in 1986). We have chosen to follow the American Bar Association's framework of analysis, using the State Bar standards, the Wolfram treatise and relevant case law as supplemental points of reference.

### II. Application of the ABA Standards

The ABA Standards prescribe a four-step analysis. We must consider (a) the duty violated, (b) the lawyer's mental state, (c) the actual or potential injury caused by the lawyer's misconduct and (d) the existence of aggravating and mitigating factors. ABA Standard 3.0.

### A. The Duty Violated

Attorneys owe duties to their clients, to the public, to the legal system and to the profession. ABA Standards 4.0, 5.0, 6.0, 7.0. By publicly impugning the integrity of the court and engaging in attempted judge shopping, Respondent violated his duty to the legal system to abide by the rules of substance and procedure which shape the administration of justice. In so doing, he also violated his obligation to maintain the respect due to the courts of justice and judicial officers.

---

**1.** The Findings of Fact are published at 856 F.Supp. 1384, 94 Daily Journal D.A.R. 7167. They are incorporated herein by reference.

**2.** Those criteria are: (1) the extent to which the lawyer's misconduct caused injury to others; (2) the blameworthiness of the lawyer under the circumstances; (3) the lawyer's general character; (4) the lawyer's prior disciplinary history or other indications of whether the conduct was isolated or part of a pattern of repeated behavior; (5) the lawyer's demeanor during, and reaction to, the disciplinary process; (6) the likely need to deter lawyers generally or the offending lawyer in particular from similar conduct in the future; (7) the desirability of parity among similar cases; and (8) the justness of the sanction for other reasons. Charles W. Wolfram, *Modern Legal Ethics* § 3.5.2 at 119 (1986).

## B. Respondent's Mental State

Under the ABA Standards, the severity of an infraction depends on the mental state of the attorney. An attorney may act intentionally, knowingly or negligently. Standard 3.0.

We found that "Respondent criticized Judge Keller in an effort to force him to recuse himself from future proceedings involving Respondent." Findings of Fact at 18. Respondent engaged in attempted judge shopping, an intentional act.

Additionally, we found that Respondent's allegations against Judge Keller, particularly the accusations of dishonesty, drunkenness and anti-Semitism, lacked an objectively reasonable basis in fact. Findings of Fact at 15–17. Respondent acted at least recklessly in impugning the integrity of the court.

## C. Actual and Potential Injury

Judge shopping impairs the rights of litigants to the random assignment of their cases to and among the judges of this court. We found that Respondent sought to have Judge Keller recuse himself in all cases in which Respondent appeared as counsel. If successful, such an effort seriously would have impaired the rights of litigants in future cases involving Respondent.[3] It also would have impacted cases not involving Respondent since recusal occurs after assignment. When a judge recuses himself from a case, he or she receives another case to maintain the parity of assignments.

Respondent accused Judge Keller of anti-Semitism, drunkenness and dishonesty in statements to the *Los Angeles Daily Journal* and to Prentice Hall, intending their widespread dissemination. The charge of anti-Semitism appeared in the *Daily Journal* and conveyed to the public that this court's decisions are influenced by bias. While Respondent's letter to Prentice Hall was not made public, it was his intention that the letter, or a portion of it, be published in the *Almanac of the Federal Judiciary*, a publication widely circulated to the bench and bar.

## D. Initial Determination

Under the ABA Standards, after considering the three factors discussed above, the court must make an initial determination as to the appropriate sanction.

The foregoing discussion indicates that either disbarment or suspension is warranted under ABA Standards 6.21 and 6.22. The former provides: "Disbarment is generally appropriate when a lawyer knowingly violates a court order or rule with the intent to obtain a benefit for the lawyer or another, and causes serious injury or potentially serious to a party, or causes serious or potentially serious interference with a legal proceeding." Standard 6.22 provides: "Suspension is appropriate when a lawyer knowingly violates a court order or rule, and there is injury or potential injury to a client or a party, or interference or potential interference with a legal proceeding."

Here, Respondent knowingly violated Local Rule 2.5.2 with the intent to benefit himself and his client, and caused serious and potentially serious injury to the this court. He also caused potentially serious interference with the random assignment of cases.

A similar result obtains under the State Bar's standards. Respondent's violations of Local Rule 2.5.2 are analogous to violations of California Business and Professions Code § 6068(b) and (f).[4] Under State Bar standard 2.6(a), the appropriate sanction is disbarment or suspension depending on the gravity of the offense. Of course, as noted above, State Bar standard 1.7(b) mandates disbarment where an attorney has a record of two prior impositions of discipline.

---

**3.** While the Panel found that Judge Keller recused himself in one case involving Respondent, *Marshall v. Gates*, it made no findings with respect to Judge Keller's subsequent treatment of cases involving Respondent. Thus, the extent of the actual injury from Respondent's attempt to judge shop is not clear.

**4.** Section 6068 provides that an attorney has a duty: "(b) To maintain the respect due to the courts of justice and judicial officers" and "(f) To abstain from all offensive personality, and to advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which he or she is charged."

### III. Aggravating and Mitigating Factors

ABA Standards 9.22 and 9.32 list several dozen aggravating and mitigating factors.

One aggravating factor is prior disciplinary offenses. ABA Standard 9.22(a). Here there are two prior offenses. Respondent engaged in judge shopping in this district in September 1981, resulting in a 30–day suspension and a $500 fine in 1982. Findings of Fact at 20. Since the conduct underlying that infraction occurred almost ten years before the conduct at issue here, the weight of the previous violation is discounted by its remoteness. ABA Standard 9.32(m). Additionally, in February 1989, Respondent was suspended for two years by the State Bar of California for charging unconscionable fees to one client, for withholding files from another client and for willfully failing to provide an accounting of deposited funds to a third client. Execution of the two-year suspension was stayed and a six-month suspension with two years of probation was imposed. Pet.Ex. 23.

A pattern of misconduct is also an aggravating circumstance. ABA Standard 9.22(c). Again, Respondent's 1982 judge shopping sanction is relevant. Further, we found that accusations by Respondent against Judges Real and Hupp in the mid–1980s supported the Committee's claim that Respondent intended to pressure the recusal of Judge Keller. *Id.* at 20–23. Thus, there is evidence of a pattern of attempting to undermine the court's random assignment of cases.

Several other aggravating factors also exist. Respondent committed two distinct violations of Local Rule 2.5.2, impugning the integrity of the court and attempted judge shopping. ABA Standard 9.22(d); *cf.* State Bar of California Standard 1.7(b) (attorney with two or more previous disciplinary infractions shall be disbarred unless "the most compelling mitigating circumstances clearly predominate"). Respondent's motive was selfish: to obtain favorable results for himself and his clients in future cases at the expense of other litigants. Standard 9.22(b). Respondent is substantially experienced in the practice of law. ABA Standard 9.22(i). He was admitted to the State Bar of California in August 1976 and to the bar of this court on approximately the same date. 9/10/93 Tr. at 14.

Respondent steadfastly has refused to acknowledge the wrongfulness of his conduct. ABA Standard 9.22(g). To the contrary, he has attacked the impartiality of both the Standing Committee and the members of this Panel. *See* Respondent's Post–Hearing Brief; Respondent's Post–Hearing Supplemental Brief Re Sanctions; Henry Weinstein, *Attorney Sanctioned for Criticizing Judge,* Los Angeles Times, May 20, 1994 at B3.[5] This behavior is not unprecedented. Respondent accused Judges Real, Hupp and Keller of bias, incompetence and/or lack of integrity. Findings of Fact at 21–23. Too often, it seems, Respondent believes that decisions adverse to him are not made on the merits. His reaction is to accuse the judge of bias, incompetence or bad motive, and in the case of Judge Keller, much more.

ABA Standard 9.32(g) lists character or reputation as a mitigating factor. The evaluation of an attorney's character is fraught with difficulty and we did not request evidence on this issue. While the record contains references to Respondent's lawyering style and skills, mainly in the form of newspaper articles and statements in appellate decisions,[6] there is insufficient evidence to

---

**5.** In the *Los Angeles Times* article, Exhibit A to Petitioner's Supplemental Trial Brief Re Sanctions, Respondent was quoted as follows:

> I am a Jew who believes a federal judge is an anti-Semite. And if friends of that judge who were appointed to the bench by the proven anti-Semite [Richard] Nixon and the odious [Ronald] Reagan attempt to harm me based on trumped-up charges for holding my belief, I cannot let that deter me. I'm a realist who holds a correct but unpopular opinion and who expects and who will bear the wrath of

opponents whose righteousness is only surpassed by their lack of integrity.

**6.** *See, e.g., Armster v. U.S. Dist. Court,* 817 F.2d 480, 483 (9th Cir.1987) (Respondent's "fortitude and tenacity in the service of his civil rights clients exemplifies the highest traditions of the bar"); *Tomer v. Gates,* 811 F.2d 1240, 1243 (9th Cir.1987) (Respondent's failure to withdraw a frivolous demand for attorneys fees was "unbecoming a member of the bar of this court."); *Hamblen v. County of Los Angeles,* 803 F.2d 462, 465 n. 4 (9th Cir.1986) (Respondent's failure to

evaluate Respondent's character. We certainly can find no evidence to support mitigation. We therefore regard this factor as neither mitigating nor aggravating.

## IV. Parity Concerns

Although each case must be assessed on its own merits, parity is an obvious concern in attorney sanctions. Wolfram, *Modern Legal Ethics* § 3.5.2 at 125. We have reviewed the cases cited by the Standing Committee and those collected in secondary sources [7] and we have observed a broad range in the sanctions imposed for misconduct involving improper attacks on the integrity of courts. Several cases are illustrative.

First, *In re Evans*, 801 F.2d 703 (4th Cir.1986), *cert. denied*, 480 U.S. 906, 107 S.Ct. 1349, 94 L.Ed.2d 520 (1987), bears a striking factual similarity to this case. There, a magistrate judge recommended that a case be dismissed for want of subject matter jurisdiction and the district court adopted the magistrate's report. In a letter to the magistrate, attorney Evans stated, *inter alia:* "I feel that your Report was either the result of your incompetence in the matter or perhaps worse and reflected a Jewish bias in favor of the [opposing attorney] whose actions were in my judgment inexcusable in this cause." *Id.* at 704. The district court commenced disciplinary proceedings against Evans, who stood by his allegations of incompetence and religious bias. Finding the allegations groundless, the district court disbarred Evans. *Id.* at 705. The Court of Appeals affirmed, finding that Evans' "failure to investigate, coupled with his unrelenting reassertion of the charges" even after the magistrate's recommendation was affirmed on appeal "convincingly demonstrates [Evans'] lack of integrity and fitness to practice." *Id.* at 706.

Second, in *United States v. Sandlin*, 12 F.3d 861 (9th Cir.1993), the Ninth Circuit affirmed an attorney's suspension for six months for stating to law enforcement authorities, with reckless disregard for the truth, that a United States District Judge ordered his court reporter to materially alter a hearing transcript and tape recording.

Third, in *Ramirez v. State Bar of California*, 28 Cal.3d 402, 169 Cal.Rptr. 206, 619 P.2d 399 (1980), an attorney alleged in a brief filed with the Ninth Circuit that three California appellate justices had acted "illegally" and "unlawfully" in reversing judgment against his client. 169 Cal.Rptr. at 207-08, 619 P.2d at 400-01. In a subsequent petition for a writ of certiorari to the Supreme Court of the United States, the attorney claimed that the state court justices had falsified the record and suggested that their "unblemished records" were "undeserved." *Id.* at 208, 619 P.2d at 401. The Supreme Court of California held that such unsupported factual charges warranted suspension for one year. The actual sanction imposed was a 30-day suspension with one year of probation. *Id.* at 213, 619 P.2d at 406.

## V. Conclusion

Respondent violated his duty to the legal system by falsely charging Judge Keller with bias, dishonesty and drunkenness. Respondent made these baseless accusations with the intent to force Judge Keller's recusal and was reckless in his disregard of the truth. We have found a number of aggravating factors: most notably, Respondent's prior record of discipline includes a sanction for judge shopping. This discipline has not deterred Respondent from continued violations of the rules.

In light of these findings, we determine that suspension for a substantial period of time is necessary. ABA Standard 2.3 prescribes six months to three years as the appropriate period for suspension. Given the nature of Respondent's conduct and the aggravating circumstances, we conclude that a two-year suspension is proper.

Let an order be entered accordingly.

include necessary information in an appeal called "especially condemnable because it seems to be standard operating procedure for Mr. Yagman").

7. *See* American Bar Association, *Judicial Criticism, in ABA/BNA Manual on Professional Conduct* (1993); W.E. Shipley, Annotation, *Attorney's Criticism of Judicial Acts as a Ground of Disciplinary Action,* 12 A.L.R.3d 1408 (1993).

ORDER IMPOSING SUSPENSION

Before RAFEEDIE, District Judge, DAVIES, District Judge, and WILLIAMS, Senior District Judge.

In a memorandum opinion filed this date, this Panel concludes that a two-year suspension of Respondent is appropriate.

Accordingly, IT IS HEREBY ORDERED that Respondent is SUSPENDED from the practice of law in this district for the two-year period commencing seven days after this order is filed.

IT IS FURTHER ORDERED that to qualify for reinstatement, Respondent shall take and pass the California Professional Responsibility Examination administered by the Committee of Bar Examiners of the State Bar of California, and shall furnish satisfactory proof of such passage to the Clerk of the Court.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of the memorandum opinion and this order on all counsel of record by facsimile and United States mail.

IT IS FURTHER ORDERED that the Clerk of the Court, pursuant to Local Rule 2.6.6, shall provide notice of the memorandum opinion and this order to the United States Attorney for the Central District of California and to the State Bar of California.