In re Carmen CRAYTON, Debtor.

Brad J. PEUGEOT, Appellant,

v.

UNITED STATES TRUSTEE and
Carmen Crayton, Appellees.

BAP No. CC–95–1270–RiVJ.
Bankruptcy No. SV94–18145–GM.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted Nov. 17, 1995.

Decided Feb. 15, 1996.

972

Brad J. Peugeot, Los Angeles, CA, in pro. per.

Ron Maroko, Los Angeles, CA, for the U.S. Trustee.

Before: RIEGLE[1], JONES, and VOLINN, Bankruptcy Judges.

## OPINION

RIEGLE, Bankruptcy Judge.

### FACTUAL BACKGROUND AND PROCEEDINGS

Attorney Brad J. Peugeot, Esq. ("Peugeot") was paid $1,400 by the Debtor, who filed a Chapter 11[2] petition in pro per. Peugeot did not seek employment as required by the bankruptcy code. He also failed to file a Rule 2016(b) statement.

The bankruptcy court issued an "Order to Show Cause Why Brad J. Peugeot Should Not Be Barred From Practicing In The Bankruptcy Court Of The Central District of California, Why He Should Not Be Reported To The State Bar and Why He Should Not Disgorge Fees" ("Order To Show Cause"). The Order to Show Cause stated, in its entirety:

> YOU ARE HEREBY ORDERED TO APPEAR AND SHOW CAUSE on the above date, time and place why this Court should not order that you no longer be able to appear in the Bankruptcy Court of the Central District of California and why you should not be reported to the State Bar. The basis of this order to show cause is that you were paid $1,400.00 in fees to represent Carmen Crayton in a Chapter 11 proceeding. You were never employed by the Court. Ms. Crayton and her current attorney had requested that you return the money by September 3, 1994. You have not done so.
>
> If you fail to appear and adequately show cause, this Court will order that you disgorge the fees immediately, that you no longer be able to practice in the Bankruptcy Court of the Central District of Califor-

---

1. The Honorable Linda B. Riegle, Chief Bankruptcy Judge of the District of Nevada, sitting by designation.

2. Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

nia, and that you be reported to the State Bar.

(Raised capitals in the original).

Peugeot filed a written response, the basis of which was that he provided "stopgap advice and technical help" to keep the debtor from losing her property. (Response to Order to Show Cause, p. 3, lines 12–18).

At the show cause hearing, the court accused Peugeot of incompetence, stating that it had told him on a prior occasion that he "couldn't practice Chapter 11 law in front of [me]." (Transcript of February 2, 1995 hearing, p. 1, lines 19–20). At the hearing, the following colloquy occurred:

The Court: Look, we've been through this before. You're not competent to do Chapter 11 work.

Peugeot: I agree with you.

The Court: You have an ethical—

Peugeot: In fact, I have read chapter, and I come to the very same conclusion that the Court has come to also. And we are both in agreement—

The Court: All right. You have—

Peugeot:—that that is not the law that I want to practice.

The Court: Well, we went through this before, and I told you weren't competent, and you agreed.

Peugeot: I agree, and I still agree.

(Transcript, pp. 3–4).

The issue of Peugeot's competency to represent debtors focused on Chapter 11. Chapter 13 and Chapter 7 were never mentioned at the hearing.

On February 9, 1995, the court entered an order barring Peugeot from Chapter 11 practice in the Central District, and from representing debtors in Chapters 13 and 7 (the "Order"). The court also ordered Peugeot to refund his $1,400 fee to the debtor. In the Order, the court stated that it found that "Mr. Peugeot readily admitted that he is not qualified to practice bankruptcy law. This is

the second time that this Court has had to rule that Mr. Peugeot not practice bankruptcy law due to his incompetence." (Order, p. 2, lines 1–4). The court also found that Peugeot had been paid $1,400 by the debtor, that he had not returned the fee despite demand by the debtor and her counsel, and that he had not sought or obtained employment by the court.[3] Peugeot filed a timely notice of appeal.

Peugeot filed a motion to stay the Order, which was denied ("Order Denying Stay"). In the Order Denying Stay, the court explained that its reason for barring Peugeot from representing debtors in all chapters was because "this is the second case in which this judge has determined that Mr. Peugeot is incapable of properly representing a debtor in this Court." (Order Denying Stay, p. 2, lines 4–7). The court explained that "[a]fter the hearing ... the Court determined that Mr. Peugeot does not qualify to represent any party in the Bankruptcy Court...." (Order Denying Stay, p. 1, lines 25–27). It further explained that at the time of the hearing, it was under the impression that the "prior incompetent representation" was in Chapter 11, "whereas the debtor was actually in Chapter 13." (Order Denying Stay, p. 2, lines 1–3).

For the reasons explained below, we affirm in part, vacate in part, and remand with instructions.

## ISSUES

The issues are (1) whether the bankruptcy court had the authority to effectively bar Peugeot from practice before the Bankruptcy Court for the Central District of California; (2) whether the bankruptcy court erred in barring Peugeot; and (3) whether the bankruptcy court abused its discretion in ordering Peugeot to refund his fee.

## STANDARD OF REVIEW

 The terms of a disciplinary order are reviewed for an abuse of discretion. *U.S.*

---

**3.** It is unclear upon which grounds the court based its Order. Specifically, it is unclear whether the order barring Peugeot from Chapter 11 practice was based upon any one or a combination of the court's findings that Peugeot was "not qualified to practice bankruptcy law", that he accepted fees without obtaining employment by the court, and that he refused to return the money despite demand by the debtor and her counsel to do so.

*v. Engstrom*, 16 F.3d 1006, 1011 (9th Cir. 1994). An abuse of discretion is found if the reviewing court "has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors." *U.S. v. Plainbull*, 957 F.2d 724, 725 (9th Cir.1992). In reviewing disciplinary orders, findings of fact are not overturned unless they are clearly erroneous. *U.S. Dist. Court For E.D. Wash. v. Sandlin*, 12 F.3d 861, 864 (9th Cir.1993). A court may disbar or suspend an attorney only upon the presentation of clear and convincing evidence. *See In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992); *Arden v. State Bar of California*, 43 Cal.3d 713, 239 Cal.Rptr. 68, 739 P.2d 1236 (1987). A trial court's interpretation and application of a local rule is reviewed for an abuse of discretion. *Hinton v. Pac. Enter.*, 5 F.3d 391, 395 (9th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 1833, 128 L.Ed.2d 462 (1994). Legal and constitutional questions are reviewed *de novo*. *U.S. Dist. Court For E.D. Wash. v. Sandlin*, 12 F.3d 861, 865 (9th Cir.1993). The standard of review regarding fees is whether the court abused its discretion. *In re Film Ventures Int'l, Inc.*, 75 B.R. 250, 253 (9th Cir. BAP 1987).

## DISCUSSION

I. *Authority of the Court to Discipline Attorneys.*

 The bankruptcy court has both the express and inherent authority to regulate the attorneys who practice before it.[4]

### A. *Express Authority.*

 Pursuant to Local Bankruptcy Rule 102(5), Peugeot "submi[tted] to the discipline of the Court with respect to conduct of the case or proceeding" and is bound by the professional standards of the State Bar of California. Furthermore, he is subject to

discipline "as the Court may deem appropriate" pursuant to Local Bankruptcy Rule 106(1).

Local Bankruptcy Rule 102(5) provides:

Jurisdiction of Court to Enforce Standards of Professional Conduct.

*Any attorney who appears for any purpose submits to the discipline of the Court with respect to conduct of the case or proceeding* and shall be subject to the standards of professional conduct as set forth in Local Rule 2.5 of the District Court.

(Emphasis added).

Rule 2.5 of the United States District Court for the Central District of California ("Local District Court Rule") adopts the rules of professional conduct contained in the California State Bar Act, the Rules of Professional Conduct of the State Bar of California, and "the decisions of any court applicable thereto."

In addition, Local Bankruptcy Rule 106(1) authorizes the court to penalize an attorney "as the Court may deem appropriate" for violating or failing to conform to the Local Bankruptcy Rules. Local Bankruptcy Rule 106(1) provides:

The violation of or failure to conform to the Local Bankruptcy Rules or F.R.B.P., *shall subject the offending party or counsel to such penalties*, including monetary sanctions or the imposition of costs and attorney's fees to opposing counsel, *as the Court may deem appropriate.*

(Emphasis added).

Despite the foregoing, Peugeot contends that his bar from Chapter 11 practice and all debtor representation is not authorized by the local bankruptcy rules, and cites *United States v. Stoneberger*, 805 F.2d 1391 (9th Cir.1986) for the proposition that a sanction imposed for violation of a local rule must be "expressly authorized."

---

4. In a footnote in his Opening Brief, Peugeot states that he did not "appear" before the bankruptcy court, and thus was not subject to the court's disciplinary powers. (Opening Brief p. 13, n. 1). Peugeot did not brief this issue, and it was not identified as an issue on appeal. An issue not specifically and distinctly argued or discussed in an opening brief is deemed to be

waived. *In re Riverside–Linden Inv. Co.*, 945 F.2d 320, 324 (9th Cir.1991).

Furthermore, Peugeot's statement is somewhat disingenuous, given that he seeks to keep his fee, and admits that he "helped" the debtor file her petition and schedules and assisted her in opposing motions for relief from automatic stay. (Opening Brief p. 9, lines 23–27).

In *United States v. Stoneberger,* 805 F.2d at 1391, the district court suspended an attorney for tardiness, invoking a local rule that provided if an attorney failed to appear the court could impose all sanctions "authorized by statute or rule" including monetary sanctions "as may be within the power of the court." *Stoneberger,* 805 F.2d at 1392–93.

Unlike the facts in *Stoneberger,* where the court was limited to sanctions authorized by other statutes or rules, Local Bankruptcy Rule 106(1) gives the court discretion to fashion a penalty "as the Court may deem appropriate."

■ Furthermore, it is axiomatic that where a bankruptcy court approves an attorney's employment pursuant to § 327(a), it has the power to determine actual competence after employment and to regulate the retention of that attorney.[5] Section 327 allows the bankruptcy court to determine whether the attorney is competent, whether there is any conflict of interest by that attorney, and whether the attorney's services are needed. *In re Kroeger Prop. and Dev., Inc.,* 57 B.R. 821, 823 (9th Cir. BAP 1986).

### B. *Inherent Authority.*

■ A bankruptcy court also has the inherent power to suspend or disbar attorneys. *See e.g., In re Johnson,*[6] 921 F.2d 585, 586 (5th Cir.1991); *In re Gunn,* 171 B.R. 517, 518 (Bankr.E.D.Pa.1994); *In re Placid Oil Co.,* 158 B.R. 404, 411 (N.D.Tex.1993); *In re Kelton Motors, Inc.,* 109 B.R. 641, 649 (Bankr.D.Vt.1989). As stated in *In re Derryberry,* 72 B.R. 874 (Bankr.N.D.Ohio 1987):

The "bankruptcy court has the inherent and statutory power and authority to suspend or remove any attorney from the roll of attorneys allowed to practice" before it. Disbarment proceedings "are not for the purpose of punishment, but rather seek to determine the fitness of an official of the court to continue in that capacity and to protect the courts and the public from the official ministration of person [sic] unfit to practice."

*Id.* at 881 (citing *In re Echeles,* 430 F.2d 347, 349 (7th Cir.1970) (other citations omitted).

■ As a unit of the district court pursuant to 28 U.S.C. § 151, a bankruptcy court is a federal court. *See In re Goldberg,* 168 B.R. 382, 384 (9th Cir. BAP 1994). A federal court has the power to control admission to its bar and to discipline attorneys who appear before it.[7] *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 2132, 115 L.Ed.2d 27 (1991). *See also U.S. v. Wunsch,* 54 F.3d 579, 582–83 (9th Cir.1995) (attorney admitted to a particular bar may be disciplined for violations of that bar's local rules of professional conduct).

Peugeot contends that a court may not invoke its inherent power absent a finding of bad faith conduct or willful abuse of the judicial process, citing *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.,* 50 F.3d 730 (9th Cir.1995), *Yagman v. Republic Ins.,* 987 F.2d 622 (9th Cir.1993), and *United States v. Stoneberger,* 805 F.2d 1391 (9th Cir.1986). In each of those cases, the wrong complained of was done to the court, and the court used its

---

**5.** 11 U.S.C. § 327(a) provides that "the trustee, with the court's approval, may employ one or more attorneys ... that do not hold or represent an interest adverse to the estate...." Section 327 is applicable to employment by debtors-in-possession. *In re CIC Inv. Corp.,* 175 B.R. 52, 54 n. 2 (9th Cir. BAP 1994).

**6.** *Johnson* notes that courts have used § 105(a) "as a basis for holding that bankruptcy courts have both statutory and inherent authority to deny attorneys and others the privilege of practicing before that bar." 921 F.2d 585, 586 (5th Cir.1991) (citations omitted).

11 U.S.C. § 105(a) provides that a bankruptcy court may issue any order, process, or judgment that is "necessary or appropriate to carry out the

provisions of this title." While § 105 is strictly confined within prescribed limits (*In re Golden Plan of California, Inc.,* 829 F.2d 705, 713 (9th Cir.1986)), this section arguably empowers a bankruptcy court to discipline attorneys who appear before it, given that incompetent attorneys frustrate the code's purpose of prompt administration of the estate and equitable distribution of assets.

**7.** There is no uniform procedure for disciplinary proceedings in the federal system. Instead, the individual judicial districts are free to define the rules to be followed and the grounds for punishment. See 28 U.S.C. § 1654.

inherent power to vindicate judicial authority.[8]

Here, the record shows that the court was concerned, at least in part, with injury to the public and with Peugeot's ethical duty to his client. At the hearing in this matter, the court told Peugeot "you're a detriment. Okay. In this area, it's just not your area of the law. So don't do it...." (Transcript, p. 5, lines 7–8). The court also told Peugeot that he:

> [T]ook $1,400 to file this Chapter 11. And you had an ethical responsibility to [the debtor] ... to say to [her] I don't do that kind of law and to help—if you wanted to help them at all, to get them somebody who does.

(Transcript, p. 4, lines 7–13).

*United States v. Stoneberger* states that "[a] specific finding of bad faith ... must 'precede any sanction under the court's inherent powers.'" 805 F.2d at 1393 (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 488 (1980). We are not convinced, however, that a "bad faith" requirement extends to every possible disciplinary exercise of the court's inherent power, especially where it is exercised to protect the public against unqualified practitioners.

The Ninth Circuit has held that the bad-faith requirement recognized in *Roadway* "is very likely limited to the context of sanctions in the form of cost- and fee-shifting." *Unigard Sec. Ins. v. Lakewood Eng'g & Mfg.*, 982 F.2d 363, 368 n. 2 (9th Cir.1992). Since *Roadway*, the Ninth Circuit has confirmed the power of a court to sanction under its inherent authority not only for bad faith, but also for willfulness or fault by the offending party. *Unigard* at 368 n. 2 (citing *Halaco Eng'g Co. v. Costle*, 843 F.2d 376, 380 (9th Cir.1988)). The Ninth Circuit has also recognized that a court can sanction under its inherent power upon a finding of recklessness. *See Hedges v. Resolution Trust Corp.*, 32 F.3d 1360, 1363 (9th Cir.1994) (courts can impose sanctions under its inherent powers or under § 1927 upon finding of recklessness or bad faith), *cert. denied,* —— U.S. ——, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995).

Moreover, even if a finding of bad faith is required, we conclude that the court impliedly found bad faith as to Peugeot's practice in the area of Chapter 11. *See Toombs v. Leone*, 777 F.2d 465, 471 (9th Cir.1985) (explicit findings are not required where the record supports a conclusion that the sanctioned attorney acted in bad faith).

The court found that Peugeot accepted $1,400 in fees from the debtor without obtaining employment from the bankruptcy court, and refused to return the money despite demand by the debtor and her attorney.

Additionally, Peugeot represented a Chapter 11 debtor when he was admittedly incompetent to do so. At the hearing, the following colloquy occurred:

> Peugeot: See, first of all, I know that—I have read the Chapter 11 law, and I know that it's highly complex. And it's not—it's like patent law, not the kinds [sic] of thing anyone would like to jump into and practice. My readings of Chapter 11 on the subject tells [sic] me that that is absolutely not the thing I would ever want to do.
>
> Court: Then why did you file this one?
>
> Peugeot: What had happened was mostly an emotional type situation. This lady and her husband were very distraught....

(Transcript, pp. 1–2).

## C. *Referral to the Standing Committee on Discipline.*

■ While the court has both the express and inherent authority to suspend attorneys, disciplinary proceedings are best reserved to independent bodies which have been specifically created to investigate charges of unpro-

---

**8.** In *United States v. Stoneberger*, 805 F.2d 1391 (9th Cir.1986), an attorney was sanctioned for tardiness. In *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730 (9th Cir.1995), an attorney was sanctioned for circumventing a court order and filing a stipulation without his client's consent. On appeal, the Ninth Circuit found that the wrong was done to the court, and affirmed a money award to be paid to the court. In *Yagman v. Republic Ins.*, 987 F.2d 622 (9th Cir. 1993), an attorney was sanctioned for, among other things, failure to clarify the characterization of a judge's petition for certiorari and disobedience of a court order.

fessional conduct and to prosecute disciplinary proceedings.

The Central District provides a mechanism for judges who become aware of attorney misconduct. *See* Local District Court Rule 2.6.1–2.6.8. Pursuant to Local District Court Rule 2.6.3, a judge may refer a disciplinary matter to the Standing Committee on Discipline, a body of twelve members of the Central District Bar which investigates charges of unprofessional conduct. If the Committee determines that an attorney deserves discipline, it issues a formal complaint and the case is assigned to a panel of three judges. The panel does not include the referring judge. The panel of judges then holds a hearing on the charges, with the Committee acting as the prosecutor.

The Standing Committee serves an important purpose. Absent referral of disciplinary matters to that independent body, the disciplining judge must serve as both prosecutor and arbiter. As the Ninth Circuit has held:

> The Standing Committee itself has no authority to impose sanctions; whether and to what extent discipline is warranted are matters exclusively within the province of the court. The committee merely assists the district court in *maintaining attorney discipline by relieving judges of the awkward responsibility of serving as both prosecutors and arbiters.*

*Standing Comm. on Discipline of the United States Dist. Court for the Cent. Dist. of California v. Yagman,* 55 F.3d 1430, 1436 (9th Cir.1995) (emphasis added).

Thus, it is recommended that matters involving attorney-discipline be referred to the Standing Committee. Referral relieves a court from serving in the dual roles of prosecutor and arbiter in the investigation, prosecution and discipline of attorneys.

## II. *Did the Bankruptcy Court Err When It Effectively Barred Peugeot From Bankruptcy Practice in the Central District of California?*

 In attorney disciplinary proceedings, the question before the court is "whether an attorney may continue to practice a profession imbued with the public interest

and trust." *Standing Comm. on Discipline of the United States Dist. Court for the S. Dist. of California v. Ross,* 735 F.2d 1168, 1170 (9th Cir.1984), *cert. denied,* 469 U.S. 1081, 105 S.Ct. 583, 83 L.Ed.2d 694 (1984). The court must consider both the fitness of one of its officers and the need to protect the public from an unqualified practitioner. *Id.*

 The criteria for reviewing attorney discipline proceedings are 1) was the disciplinary proceeding fair; 2) does the evidence support the findings below; and 3) was the penalty imposed reasonable. *See id.* at 1170–72.

### A. *Fairness of the Proceeding and Procedural Due Process.*

 An attorney who is subject to discipline is entitled to notice and an opportunity to be heard. *In re Ruffalo,* 390 U.S. 544, 550, 88 S.Ct. 1222, 1225, 20 L.Ed.2d 117 (1968); *Rosenthal v. Justices of the S.Ct. of California,* 910 F.2d 561, 564 (9th Cir.1990), *cert. denied,* 498 U.S. 1087, 111 S.Ct. 963, 112 L.Ed.2d 1050 (1991). The attorney must receive prior notice as to the "reach of the grievance procedure" and the precise nature of the charges leveled against him. *In re Ruffalo,* 390 U.S. at 552, 88 S.Ct. at 1226. An evidentiary hearing is not required. *In re Evans,* 834 F.2d 90, 91 (4th Cir.1987).

*Ruffalo,* 390 U.S. at 544, 88 S.Ct. at 1222, involved a disciplinary action against an attorney accused of soliciting clients through an agent. The original charge enumerated twelve counts. At the hearing, however, a thirteenth count which was based upon the attorney hiring the agent was added after the attorney had presented his defense. The state board sanctioned the attorney on the thirteenth count. The United States Supreme Court reversed, reasoning that the attorney had no notice that his hiring of the agent would be considered a disbarment offense until after he had testified. The Court held that:

> [W]hen proceedings for disbarment are "not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defence [sic]."

*Ruffalo,* 390 U.S. at 550, 88 S.Ct. at 1225 (citing *Randall v. Brigham,* 74 U.S. (7 Wall.) 523, 540, 19 L.Ed. 285 (1868)).

▮ In this case, the show cause order did not give Peugeot notice that he was accused of being "incompetent" to practice bankruptcy law.[9] At the hearing itself, without prior notice, the court accused Peugeot of being incompetent to practice Chapter 11 law. After the hearing, and without giving Peugeot an opportunity to defend himself, the court made the additional charges that Peugeot was incompetent to represent debtors in Chapters 13 and 7.

Peugeot admitted at the hearing that he was incompetent to practice Chapter 11 bankruptcy law, and thus any error associated with the lack of notice of that charge is rendered harmless by his admission.[10] *See Sexton v. Ark. Supreme Court Comm. on Prof. Conduct,* 730 F.Supp. 285 (W.D. Ark 1990) (if charges are true no contrary facts could be forthcoming, even with notice). There was no due process violation as to the bar from Chapter 11 practice.

Peugeot, however, was not given notice or the opportunity to defend himself against the court's charges of being incompetent to practice Chapters 13 and 7. Therefore, barring Peugeot from representing debtors in those chapters was an abuse of discretion.

Peugeot had prior notice that he was charged with failure to seek employment by the court, with accepting fees from the debtor, and with failure to refund the money when requested to do so. The record shows that the Order to Show Cause specifically stated those charges. Thus, there was no due process violation as to those charges.

### B. *Does the Evidence Support the Findings?*

▮ The Order states that "Mr. Peugeot readily admitted that he is not qualified to practice bankruptcy law." (Order, p. 2, lines 1–2). The evidence, however, does not support that finding.

The record shows that Peugeot admitted only that he was incompetent to practice Chapter 11 bankruptcy law. No evidence was taken as to Peugeot's current fitness to practice Chapters 13 and 7. The record shows that after the hearing, the court relied upon a 1992 Chapter 13 case in order to assess Peugeot's current fitness to represent a debtor in bankruptcy. The bar from debtor practice in Chapters 13 and 7 is not supported by clear and convincing evidence and cannot be affirmed, given the lack of evidence as to Peugeot's current fitness to practice in those areas.

▮ Peugeot admitted to being incompetent to practice Chapter 11 law. Thus the court's finding as to his incompetence in Chapter 11 is supported by clear and convincing evidence.

▮ The court found that Peugeot received $1,400 in fees, failed to seek employment by the court, and refused to return the money when requested to do so. Those findings are clearly supported by the record. Peugeot admitted being paid $1,400 in fees. (Transcript, p. 4, lines 7–10). He has not disputed that he failed to return the fee when requested to do so by the debtor and her counsel, and failed to obtain employment from the court.

### C. *Is the Penalty Imposed Reasonable?*

▮ The Order permanently bars Peugeot from practicing Chapter 11 bankruptcy law, and permanently bars him from representing debtors in Chapters 13 and 7. The bar is district-wide.[11] One district court

---

9. The Order to Show Cause notified Peugeot only that the charges against him were (1) receiving $1,400 in fees, (2) failure to be employed by the court, and (3) failure to refund the money when requested to do so by the client.

10. It could be argued that Peugeot waived his due process rights by not objecting to his lack of notice at the hearing. *See e.g., In re Marino,* 794 F.2d 1367 (9th Cir.1986) (failure to object to issuance of ex parte order deemed to be waiver of right to notice). *But see Gendron v. State Bar of California,* 35 Cal.3d 409, 197 Cal.Rptr. 590, 673 P.2d 260 (1983) and *Woodard v. State Bar of California,* 16 Cal.2d 755, 108 P.2d 407 (1940) (lack of notice not waived by apparent failure to object).

11. In its Order Denying Stay, the court stated that Peugeot "may seek to have other judges modify or ignore this order ... if he can convince them that he is a capable practitioner."

judge, however, is not bound to follow the decision of another. *See Starbuck v. City and Cty. of San Francisco*, 556 F.2d 450 (9th Cir.1977) (doctrine of stare decisis does not compel one district court judge to follow the decision of another).

The terms of a disciplinary order are reviewed for an abuse of discretion. *U.S. v. Engstrom*, 16 F.3d 1006, 1011 (9th Cir.1994). An abuse of discretion is found if the reviewing court "has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon weighing of the relevant factors." *U.S. v. Plainbull*, 957 F.2d 724, 725 (9th Cir.1992).

Both the American Bar Association and the State Bar of California have promulgated standards for the imposition of sanctions. *See* American Bar Association, Standards for Imposing Lawyer Sanctions (as amended in 1992); State Bar of California Standards for Attorney Sanctions for Professional Misconduct (adopted in 1986).

 We adopt the American Bar Association Standards, using the State Bar Standards and relevant case law as supplemental points of reference. The ABA Standards set forth a model which can be used to categorize misconduct and to identify the appropriate sanction. They promote the thorough, rational consideration of relevant factors, and help to achieve consistency when imposing attorney discipline. We consider these factors as appropriate in determining a reasonable disciplinary sanction. *See Standing Comm. on Discipline of the United States Dist. Court for the Cent. Dist. of California v. Yagman*, 856 F.Supp. 1395, 1396 (C.D.Cal.1994), *reversed on other grounds*, 55 F.3d 1430 (9th Cir.1995). The failure to consider such factors constitutes an abuse of discretion.

ABA Standard 3.0 describes the factors which a court should consider in determining an appropriate sanction. The factors are: (a) the duty violated—was the duty to a client, the public, the legal system, or the profession? (b) the lawyer's mental state— did the lawyer act intentionally, knowingly, or negligently? (c) the actual or potential injury caused by the lawyer's misconduct— was there a serious or potentially serious injury? and (d) the existence of aggravating and mitigating factors.

ABA Standards 4.51–4.53 describe the sanctions which are appropriate in cases where a lawyer lacks competence. The sanctions are determined, in part, by the lawyer's mental state. Absent aggravating or mitigating circumstances, and upon application of the factors set out in Standard 3.0, disbarment is generally appropriate when a lawyer's course of conduct demonstrates that the lawyer lacks an understanding of the most fundamental legal doctrines or procedures, and the lawyer's conduct causes injury or potential injury to a client. (ABA Standard 4.51). According to the commentary, since disbarment is such a serious sanction, it should rarely be imposed on a lawyer who has demonstrated only a single instance of incompetence. Instead, disbarment should be imposed on lawyers whose course of conduct demonstrates that they cannot or will not master the knowledge and skills necessary for minimally competent practice. Suspension is generally appropriate when a lawyer engages in an area of practice in which the lawyer knows he or she is not competent, and causes injury or potential injury to a client. (ABA Standard 4.52). According to the commentary, in such cases it may also be appropriate to attach certain conditions to the suspension, such as a requirement that the lawyer pass the bar examination or limit his or her practice to certain areas.

Reprimand is generally appropriate when a lawyer demonstrates a failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client; or is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury. (ABA Standard 4.53). According to the commentary, a combination of reprimand and probation may be a "productive" approach, such as requiring association with co-counsel, or limiting the lawyer's area of practice and

(Order Denying Stay, p. 3, lines 22–24). It is unclear whether the court intended to modify its earlier order on this point, but in any event it has not done so formally.

requiring remedial education in a particular area of the law.

The decision as to the effect of any aggravating or mitigating factors should come only after the initial determination of the sanction. (Preface to ABA Standards for Imposing Lawyer Sanctions). ABA Standard 9.21 defines "aggravating circumstances" as "any considerations, or factors that may justify an increase in the degree of discipline imposed." Pursuant to ABA Standard 9.22, aggravating factors which may be considered include: (a) prior disciplinary offenses; (b) dishonest or selfish motive; (c) a pattern of misconduct; (d) multiple offenses; (e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process; (g) refusal to acknowledge wrongful nature of conduct; (h) vulnerability of victim; (i) substantial experience in the practice of law; (j) indifference to making restitution; and (k) illegal conduct, including that involving the use of controlled substances.

ABA Standard 9.31 defines "mitigating circumstances" as "any considerations or factors that may justify a reduction in the degree of discipline to be imposed." Pursuant to ABA Standard 9.32, factors which may be considered in mitigation include: (a) absence of a prior disciplinary record; (b) absence of a dishonest or selfish motive; (c) personal or emotional problems; (d) timely good faith effort to make restitution or to rectify consequences of misconduct; (e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings; (f) inexperience in the practice of law; (g) character or reputation; (h) physical disability; (i) mental disability or chemical dependency including alcoholism or drug abuse when; (1) there is medical evidence that the respondent is affected by a chemical dependency or mental disability; (2) the chemical dependency or mental disability caused the misconduct; (3) the respondent's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (4) the recovery arrested the misconduct and recurrence of that misconduct is unlikely; (j) delay in disciplinary proceedings; (k) imposition of other penalties or sanctions; (l) remorse; and (m) remoteness of prior offenses.

We remand the determination of the appropriate sanction to the bankruptcy court in order to allow it to consider the relevant factors.

Furthermore, because it is unclear upon which grounds the court based its order barring Peugeot from Chapter 11 practice, on remand the court shall clarify upon what grounds the court's sanctions were based. The court shall consider the relevant factors for each disciplinary sanction imposed, and shall provide the reasons for its decision.

III. *Did the bankruptcy court abuse its discretion when it ordered Peugeot to refund his entire fee?*

 11 U.S.C. § 329(a) requires an attorney to disclose the amount of all compensation "paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case. . . ." Fed.R.Bankr.P. 2016(b) requires a statement of compensation to be filed within fifteen days after the order for relief. It is uncontroverted that $1,400 was paid to Peugeot pre-petition, and that the services were performed and the retainer was paid in contemplation of a bankruptcy filing. (Appellant's Brief, page 8). The disclosure requirements imposed by § 329 are mandatory, not permissive, and an attorney who fails to comply with the disclosure requirements forfeits any right to receive compensation. *In re Inv. Bankers, Inc.,* 4 F.3d 1556, 1565 (10th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct 1061, 127 L.Ed.2d 381 (1994).

Thus, the bankruptcy court did not abuse its discretion in ordering Peugeot to refund the fee.

IV. *Conclusion.*

For the reasons stated above, we AFFIRM the provision of the Order to refund

the $1,400 fee. We AFFIRM the provision of the Order which bars Peugeot from Chapter 11 practice, but VACATE the provision which bars him from practice on a permanent, district-wide basis.[12] We VACATE the provision of the Order barring Peugeot from representing debtors in Chapters 13 and 7, and remand for the purpose of making findings of fact and conclusions of law as to those chapters after providing adequate notice and the opportunity to be heard. We REMAND with instructions that the bankruptcy court consider the relevant factors in determining its disciplinary sanction as to Chapter 11, and to determine the terms of its sanction (i.e.; whether disbarment or suspension is appropriate, the duration of its sanction, whether remedial education is an appropriate condition to suspension, etc.) The court shall also provide the reasons for its decision. On remand, the court shall clarify upon what grounds its sanction was based, and shall consider the relevant factors discussed above for each sanction imposed.

While acknowledging that referral of disciplinary matters to the Standing Committee on Discipline is not mandated by Local District Court Rule 2.6.3, for the reasons stated above we strongly recommend that the bankruptcy court consider use of that procedure on remand.

AFFIRMED in part, VACATED in part, and REMANDED with instructions.

---

**12.** The Panel recognizes that barring Peugeot from practice in one courtroom creates practical difficulties, in that the assignment of a case to a particular judge is always unknown until a case is filed. For this reason, as well as those discussed elsewhere in this opinion, this matter is best referred to the Standing Committee.