In re Ralbert Rallington BROOKS–
HAMILTON, Debtor.

David A. Smyth, Appellant.

BAP No. NC–08–1233–DJuMk.
Bankruptcy No. 03–44829.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Submitted Without Oral Argument
on Oct. 31, 2008.

Filed Jan. 21, 2009.

Andrew Edward Smyth, Los Angeles, CA, for Appellant.

Before DUNN, JURY and MARKELL, Bankruptcy Judges.

## OPINION

DUNN, Bankruptcy Judge.

The appellant, David Smyth, previously appealed the bankruptcy court's orders imposing a monetary sanction and a six-month suspension from practice before the bankruptcy courts of the Northern District of California.[1] The Panel affirmed the bankruptcy court's orders in a published opinion, *Smyth v. City of Oakland (In re Brooks–Hamilton)*, 329 B.R. 270 (9th Cir. BAP 2005). On further appeal, the Ninth Circuit affirmed in part, reversed in part and remanded to the bankruptcy court for further proceedings. *Smyth v. City of Oakland (In re Brooks–Hamilton)*, 271 Fed.Appx. 654 (9th Cir.2008).

On remand, the bankruptcy court reduced the monetary sanction, but reimposed the six-month suspension sanction, determining that the circumstances still warranted it.

Smyth comes before the Panel once more to appeal the bankruptcy court's order reimposing the six-month suspension sanction. Because the Panel's prior decisions, *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404 (9th Cir. BAP 2005), and *Peugeot v. United States Trustee (In re Crayton)*, 192 B.R. 970 (9th Cir. BAP 1996), require consideration of the American Bar Association ("ABA") standards in determining the appropriate sanction, which the bankruptcy court did not address, we VACATE in part and REMAND, with a strong recommendation to the bankruptcy court that it refer the matter to the Standing Committee on Professional Conduct of the Northern District of California ("Standing Committee").

## I. FACTS[2]

Smyth was the attorney for the debtor, Ralbert Rallington Brooks–Hamilton, in

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9037, as enacted and promulgated prior to October 17, 2005, the effective date of most of the provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109–8, 119 Stat. 23.

2. Although *Smyth I* and the bankruptcy court's memorandum decisions already have set forth the facts in substantial detail, we recount those facts pertinent to the present appeal.

his bankruptcy case. On behalf of the debtor, Smyth filed a chapter 13 petition on August 21, 2003.[3]

The schedules listed the City of Oakland ("Oakland") as a secured creditor with undisputed claims in the aggregate amount of $603,000.[4] The debtor's chapter 13 plan provided that Oakland's claims would be paid by April 1, 2004, through a sale or refinance of the debtor's real property.[5] Oakland did not object to the plan; the plan was confirmed.

Oakland subsequently filed a proof of claim, asserting a secured claim in the amount of $983,146.51. On behalf of the debtor, Smyth filed an objection to Oakland's claim, contending that it could not be paid, as the confirmed plan did not provide for payment of secured claims, and that it could not be paid as an unsecured claim, because Oakland had not filed an unsecured claim.

The bankruptcy court learned of the objection at a hearing on March 18, 2004, in a related adversary proceeding (adv.proc. no. 03–4837). After reviewing the plan and listening to Smyth's explanations regarding the plan and the objection, the bankruptcy court informed Smyth that it

intended to enter an order to show cause why sanctions should not be imposed on him, as it considered the bankruptcy case to be an abusive filing and Smyth's conduct in the bankruptcy case to be "horrifying." [6]

True to its word, the bankruptcy court issued an order to show cause why Smyth should not be sanctioned ("OSC"). The bankruptcy court advised Smyth that it was considering imposing sanctions against him, including permanent disbarment, though it did not state the legal bases for the possible sanctions. The bankruptcy court later specified, in an order continuing the hearing on the OSC, that it would impose sanctions under Rule 9011(b), § 105 or its inherent authority to sanction, should it deem sanctions appropriate ("Continuance Order"). Meanwhile, in the adversary proceeding, Oakland filed a motion to impose monetary sanctions under Rule 9011(b) against Smyth ("Rule 9011 Motion").[7]

After the hearing on the OSC, the bankruptcy court issued a memorandum decision ("First Memorandum Decision"), holding that Smyth violated Rule 9011(b)(1) and (b)(2) by filing and presenting the

3. The bankruptcy court later converted the case from chapter 13 to chapter 7.

4. Oakland's claims arose from loans to the debtor totaling $500,000. (Oakland made the loans to the debtor under a federal program designed to encourage the establishment of businesses in economically depressed urban areas.) As security, the debtor gave Oakland liens on his residence, a warehouse and certain business personal property.

5. In papers filed with the bankruptcy court shortly before confirmation of the plan, the debtor stated that he had a buyer for the warehouse and that he would sell it to pay off all of his creditors. Statement of Changed Circumstances, 1:21–22; Declaration to Support Step Payments Proposed, 1:21–23.

6. At the March 18, 2004 hearing, the attorney for Oakland informed the bankruptcy court that no hearing had been set on the objection to Oakland's claim. Tr. of March 18, 2004 Hr'g, 29:19–23. The bankruptcy court stated that Smyth could set the objection for hearing at the same time as the hearing on the order to show cause, if he chose to do so. Tr. of March 18, 2004 Hr'g, 30:2–3.

7. Oakland had moved for sanctions against both the debtor and Smyth, but the bankruptcy court determined that it would be unfair to sanction the debtor for claims that Smyth asserted as attorney in the debtor's behalf. Tr. of July 7, 2004 Hr'g, 45:10–17.

objection.[8] The bankruptcy court found that the contentions made by Smyth in the objection were frivolous and implausible. The bankruptcy court determined that the plan did not need to refer to Oakland's claim as secured in order for it to be paid through the plan as secured. Oakland had a right to payment on its claim because it timely filed its proof of claim, and the plan provided for its payment. Moreover, the bankruptcy court found that Oakland did not need to file a proof of unsecured claim because it had filed a proof of claim, asserting that all of its claims were secured. As the bankruptcy court reasoned:

> A creditor must be able to rely on a proof of claim asserting secured status to preserve its underlying monetary claim in the event its security interest is avoided. Otherwise, it would have to file multiple claims or plead in the alternative in every case on the chance that a debtor might challenge its lien.

First Memorandum Decision, 8:16–20. Because no reasonable attorney would make such baseless contentions, the bankruptcy court concluded, Smyth filed the objection for an improper purpose.

The bankruptcy court decided to suspend Smyth from practice before the bankruptcy courts of the Northern District of California for six months, though he could continue to appear in cases in which he already was attorney of record. Although it initially warned Smyth in the OSC that it was considering disbarment as a sanction, the bankruptcy court ultimately decided to suspend Smyth as a less severe sanction.

Concurrently with its First Memorandum Decision, the bankruptcy court issued an order suspending Smyth from practice ("First Suspension Order"). At the same time, pursuant to Oakland's Rule 9011 Motion, the bankruptcy court imposed a $10,671 monetary sanction against Smyth ("Monetary Sanction Order") on the grounds that he asserted frivolous claims in the adversary proceeding complaint and filed the adversary proceeding complaint for an improper purpose.

Smyth appealed the First Suspension Order and the Monetary Sanction Order, both of which the Panel affirmed in *Smyth I*.

On further appeal, the Ninth Circuit reversed in part the Monetary Sanction Order, determining that two of the three claims in the adversary proceeding complaint were not frivolous. *Smyth*, 271 Fed. Appx. at 657–60. The Ninth Circuit remanded the Monetary Sanction Order to the bankruptcy court for a redetermination as to whether Smyth filed the one frivolous claim for an improper purpose and for a redetermination of the amount of the monetary sanction, given that only one claim in the adversary proceeding complaint was frivolous. *Id.* at 660.

As to the First Suspension Order, the Ninth Circuit held that the bankruptcy court neither abused its discretion in determining that Smyth's assertions in the objection were frivolous nor in deciding to impose the sanction against him.[9] *Id.* at

---

8. In the First Memorandum Decision, the bankruptcy court stated that it had advised Smyth that it might base its sanctions on Rule 9011, § 105 or 28 U.S.C. § 1927. Memorandum of Decision re: Order to Show Cause re: Rule 9011 Sanction ("First Memorandum Decision"), 4:14–16. Neither the OSC nor the Continuance Order cited 28 U.S.C. § 1927 as possible statutory authority for sanctioning

Smyth. The bankruptcy court ultimately determined that it would impose sanctions under Rule 9011 only. First Memorandum Decision, 4:16–18.

9. The Ninth Circuit declined to consider "any claims of error as to the type of sanction the bankruptcy court imposed, including whether the bankruptcy court had the authority to

660–61. The Ninth Circuit vacated and remanded the First Suspension Order, however, as it had been based, in part, on the imposition of the Monetary Sanction Order. *Id.* at 660.

On remand, without holding a hearing or seeking further briefing or additional evidence from Smyth, the bankruptcy court reduced the amount of the monetary sanction, but reimposed the six-month suspension sanction. Memorandum of Decision re: Sanctions on Remand ("Second Memorandum Decision"), 4:5–10. Reconsidering the issues presented in the case, and taking into account the reduced monetary sanction, the bankruptcy court stated in the Second Memorandum Decision that it remained convinced that the six-month suspension sanction was appropriate under the circumstances. Second Memorandum Decision, 4:7–15.

On September 2, 2008, the bankruptcy court entered its order suspending Smyth from practice before the bankruptcy courts of the Northern District of California for six months, but allowing him to continue to appear in cases in which he already was attorney of record ("Second Suspension Order"). Second Memorandum Decision, 4:19–21; Second Suspension Order, 1:18–20.

Smyth appeals.[10]

suspend Smyth from practice before the entire bankruptcy court." *Smyth*, 271 Fed. Appx. at 661 n. 10.

10. Smyth filed an ex parte motion for a stay pending appeal of the Second Suspension Order. In support of his motion for a stay pending appeal, Smyth cited *Crayton* and *Lehtinen.* Smyth argued that he would prevail on the merits because, in light of the Panel's holdings in *Crayton* and *Lehtinen,* the Panel would remand the Second Suspension Order to the bankruptcy court. The bankruptcy court denied the motion for stay pend-

## II. JURISDICTION

Before we can address the merits of this appeal, the Panel must determine whether the bankruptcy court had jurisdiction to adjudicate the suspension sanction and to issue the Second Suspension Order and whether we, in turn, have jurisdiction to review the Second Suspension Order on appeal.

Relying on *Sheridan v. Michels (In re Sheridan),* 362 F.3d 96 (1st Cir.2004), Smyth argues that the bankruptcy court lacked jurisdiction to adjudicate the suspension sanction because such a determination is not a core proceeding. Accordingly, Smyth claims the bankruptcy court had no authority to issue the Second Suspension Order.

■ Contrary to Smyth's contentions, the bankruptcy court did have jurisdiction to adjudicate the suspension sanction. Because Smyth's objection to Oakland's claim constituted a core proceeding under 28 U.S.C. § 157(b)(2)(A), the OSC itself, which was set to address Smyth's frivolous assertions in the objection, constituted a core proceeding. *See Lehtinen,* 332 B.R. at 410–11 (stating, in dictum, that, as acts on which attorney's suspension were based occurred in the course of his representing the debtor in matters central to administration of debtor's case, disciplinary proceeding fell within ambit of 28 U.S.C. § 157(b)(2)(A)).[11] *See also Polo Bldg.*

ing appeal, believing that the appeal was so unlikely to prevail that the stay would be inappropriate. The bankruptcy court did grant a 30–day stay, however, to provide Smyth an opportunity to move for a stay pending appeal with the Panel.

Smyth obtained an order granting stay pending appeal of the Second Suspension Order from the Panel. The Panel also expedited the present appeal.

11. In *Lehtinen,* the Panel agreed with the dissent's reasoning in *Sheridan* that a disciplinary proceeding, addressing misconduct

*Group, Inc. v. Rakita (In re Shubov),* 253 B.R. 540, 543 (9th Cir. BAP 2000). *Accord Chicago Bank of Commerce v. Amalgamated Trust & Savings Bank (In re Memorial Estates, Inc.),* 116 B.R. 108, 111 (N.D.Ill.1990); *Fed. Sav. & Loan Ins. Corp. v. Sutherlin,* 109 B.R. 700, 703 (E.D.La.1989); *In re Emergency Beacon Corp.,* 52 B.R. 979, 987 (S.D.N.Y.1985).

Moreover, as we discuss below, the bankruptcy court had authority to impose the suspension sanction under Rule 9011, § 105(a) and its inherent authority.

■ Because the bankruptcy court had jurisdiction to adjudicate the suspension sanction under 28 U.S.C. § 157(b)(1) and (b)(2)(A), we have jurisdiction to review the appeal under 28 U.S.C. § 158.

### III. ISSUES

(1) Whether the bankruptcy court had authority to suspend Smyth from practice before the bankruptcy courts of the district.

(2) Whether the bankruptcy court abused its discretion in reimposing the suspension sanction.

### IV. STANDARDS OF REVIEW

■ We review all aspects of a bankruptcy court's decision to impose Rule 9011 sanctions for abuse of discretion. *Valley Nat'l Bank v. Needler (In re Grantham Bros.),* 922 F.2d 1438, 1441 (9th Cir. 1991). We review the bankruptcy court's choice of sanction for an abuse of discre-

tion. *U.S. Dist. Court for E.D. Wash. v. Sandlin,* 12 F.3d 861, 865 (9th Cir.1993). The bankruptcy court abuses its discretion if it bases its decision on " 'an erroneous view of the law or on a clearly erroneous assessment of the evidence.' " *Grantham Bros.,* 922 F.2d at 1441 (quoting *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). Under the abuse of discretion standard, we will not reverse the bankruptcy court unless we have a definite and firm conviction that it made a clear error in judgment. *Valley Eng'rs, Inc. v. Electric Eng'g Co.,* 158 F.3d 1051, 1057 (9th Cir.1998)(reviewing imposition of discovery sanction).

■ We review the bankruptcy court's "findings of fact in support of a disciplinary order for clear error." *Sandlin,* 12 F.3d at 864. We must accept the bankruptcy court's findings of fact unless we have a definite and firm conviction that a mistake has been committed. *Latman v. Burdette,* 366 F.3d 774, 781 (9th Cir.2004).

■ We review de novo questions involving due process. *See Sandlin,* 12 F.3d at 865 ("Legal and constitutional questions are reviewed de novo.").

### V. DISCUSSION

In this appeal, Smyth advances arguments not presented before the bankruptcy court, at least at the time it decided to reimpose the suspension sanction. The bankruptcy court did not have an opportunity to consider these arguments, as it

---

that occurred during a core proceeding, itself constituted a core proceeding. 332 B.R. at 410–11.

We observe that the majority in *Sheridan* acknowledged that an attorney disciplinary proceeding taking place during a pending bankruptcy case may constitute a core proceeding. *Sheridan,* 362 F.3d at 107, 111.

We also determine that *Sheridan* is distinguishable from this appeal. Unlike *Sheridan,*

which involved a disciplinary proceeding for an attorney's misconduct that occurred over the course of numerous previously closed bankruptcy cases, the present appeal involves sanctions imposed for conduct that occurred during the debtor's bankruptcy case, which was still open at the time the bankruptcy court set the hearing on the OSC.

neither held a hearing nor sought additional briefing or evidence.

Although the Panel generally declines to consider arguments not raised before the bankruptcy court, *O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.)*, 887 F.2d 955, 957 (9th Cir.1989), we deem it appropriate to consider these arguments here. *See Pizza of Hawaii, Inc. v. Shakey's Inc. (In re Pizza of Hawaii, Inc.)*, 761 F.2d 1374, 1379 (9th Cir.1985)(reviewing court has discretion to consider issues presented by record on appeal even if not raised before bankruptcy court).

Smyth challenges the Second Suspension Order on two grounds. He first asserts that the bankruptcy court had no authority to suspend him from practice. He next contends that the bankruptcy court did not consider the relevant factors, as set forth in *Crayton*, to determine the appropriate sanction.

We address each of these arguments in turn.

### A. Authority to suspend an attorney from practice before the bankruptcy courts of the district

Smyth claims that the bankruptcy court had no authority to suspend him from practice before all of the bankruptcy courts of the district. He asserts that the bankruptcy court has limited jurisdiction under 28 U.S.C. § 157: it is authorized only to administer bankruptcy cases and exercise control in its own courtroom; the bankruptcy court's jurisdiction does not extend to admitting attorneys to the bar. Because the authority to discipline attorneys springs from the authority to admit them to the bar, Smyth reasons, the bankruptcy court could not suspend him from practicing in future bankruptcy cases before other bankruptcy courts of the district.

As part of his argument, Smyth summarily dismisses inherent authority and § 105 as empowering a bankruptcy court to impose a suspension sanction. He maintains that, though a district court possesses the inherent power to control admission to its bar and discipline attorneys before it, bankruptcy courts lack such inherent authority because they have limited subject matter jurisdiction, which does not include the authority to admit attorneys. He further asserts that § 105 does not empower bankruptcy courts to suspend attorneys because § 105 only grants bankruptcy courts the power to implement provisions of the Bankruptcy Code, which does not include a provision authorizing them to prohibit attorneys from participating in future bankruptcy cases.

■ We reject Smyth's arguments. Simply because bankruptcy courts have limited subject matter jurisdiction under § 157 does not mean that they lack the authority to run their courtrooms and to supervise the attorneys appearing before them. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43, 47, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). As we discuss below, the bankruptcy court had ample authority to suspend Smyth from practice before the bankruptcy courts of the district.

#### 1. Inherent authority

■ Federal courts are vested with inherent powers to manage their cases and courtrooms and to maintain the integrity of the judicial system. *Chambers*, 501 U.S. at 43–45, 111 S.Ct. 2123. Further, federal courts possess the inherent authority to suspend attorneys. *In re Snyder*, 472 U.S. 634, 643, 105 S.Ct. 2874, 86 L.Ed.2d 504 (1985). Bankruptcy courts also possess the inherent authority to suspend or disbar attorneys, as implicitly recognized by Congress in enacting § 105(a). *Lehtinen*, 332 B.R. at 412–13; *Crayton*,

192 B.R. at 975 (bankruptcy court has "the express and inherent authority to regulate the attorneys who practice before it"). *See also Chambers,* 501 U.S. at 47, 111 S.Ct. 2123; *Caldwell v. Unified Capital Corp. (In re Rainbow Magazine),* 77 F.3d 278, 284 (9th Cir.1996).

The bankruptcy court's authority to suspend an attorney springs not only from its inherent powers to manage its cases and courtroom, *see Chambers,* 501 U.S. at 43, 111 S.Ct. 2123, but also from the attorney's role as an officer of the court. *Snyder,* 472 U.S. at 643, 105 S.Ct. 2874. *See also* 1 *Collier on Bankruptcy* ¶ 8.07[1] (Alan N. Resnick & Henry J. Sommer, eds., 15th ed. rev. 2008)("[P]rofessionals are subject to the court's inherent power to maintain order in their courts, punish improper behavior, control admission to the bar and discipline attorneys."). Such authority is "necessary to maintain the respectability and harmony of the bar, as well as to protect the public." *Gadda v. Ashcroft,* 377 F.3d 934, 948 (9th Cir.2004) (citations omitted).

The Ninth Circuit recently determined that a bankruptcy court did not abuse its discretion in sanctioning an attorney under its inherent authority for his repeated incompetent and irresponsible representation of clients before the court. *Hale v. United States Trustee,* 509 F.3d 1139, 1148 (9th Cir.2007). In *Hale,* the attorney prepared the debtors' petition and schedules but provided no other legal services. The attorney did not inform the debtors that he would not represent them at the § 341(a) meeting or otherwise represent them in "the normal, ordinary and fundamental aspects of their case." *Id.* at 1144. Moreover, the attorney did not obtain the debtors' informed consent to the purported limitations on his legal representation. *Id.* The bankruptcy court imposed both monetary and nonmonetary sanctions against the attorney, which consisted of a $2,000 sanction to "encourage him to change his conduct [and] serve as a deterrent to others" and certain restrictions on his practice. *Id.* at 1144–45.

The Ninth Circuit affirmed the bankruptcy court, determining that the bankruptcy court had inherent authority to sanction misconduct by attorneys appearing before it. *Id.* at 1148 (citing *Caldwell,* 77 F.3d at 284). The Ninth Circuit recognized that the bankruptcy court had ordered the sanctions to counter the attorney's incompetent and irresponsible legal representation. *Id.* at 1148–49. The Ninth Circuit "agree[d] with the bankruptcy court that it should 'not [have to] countenance Hale's exclusion of critical and necessary services, or endorse the pretense of adequately advised and informed consent in [the attorney's] bankruptcy cases.' " *Id.* at 1148. Here, as in *Hale,* the bankruptcy court had (and exercised its) inherent authority to impose the district-wide suspension sanction against Smyth for his continued incompetence and unprofessional conduct.

The record indicates that the bankruptcy court had been concerned for some time with instances of Smyth's incompetence and/or unprofessional conduct, as demonstrated by his filing of the frivolous objection to Oakland's claim. At the March 18, 2004 hearing, the bankruptcy court told Smyth that it was "frankly horrified by [his] conduct in the case." Tr. of March 18, 2004 Hr'g, 29:11–12. The bankruptcy court also stated in the OSC that it considered Smyth's conduct "in connection with [the bankruptcy] case to be reprehensible." Order to Show Cause re: Apparent Bad Faith Filing, 4:5–6. It further stated that "it [was] apparent [to the bankruptcy court] that [Smyth had] not improved his standard of practice in response to the imposition of [previous] lesser sanctions."

Order to Show Cause re: Apparent Bad Faith Filing, 4:21–23.

In the First Memorandum Decision, the bankruptcy court found that Smyth's contentions in the objection were frivolous, implausible and ridiculous, and no reasonable attorney would have made them. The bankruptcy court concluded that, despite a previous sanction requiring Smyth to complete forty hours of continuing legal education, it had been "insufficient to deter [his] continued unprofessional conduct" and "appear[ed] to have done little good." First Memorandum Decision, 10:5–6, 15–16. We infer from these statements that the bankruptcy court was concerned with the harm Smyth's continued incompetence and unprofessional conduct, as evidenced by his filing of the frivolous objection, could inflict on parties appearing before the bankruptcy court.

Because of the potential for harm Smyth posed to the public and to bankruptcy administration in the Northern District of California, the bankruptcy court had inherent authority to impose a district-wide suspension against him. Merely to suspend Smyth from one bankruptcy courtroom but not from other bankruptcy courtrooms in the district would not have protected the public adequately. Moreover, the bankruptcy court wished to deter Smyth from making frivolous claims and engaging in other incompetent and unprofessional conduct in the future. A suspension restricted to one courtroom only would vitiate the deterrence purpose of the sanction.

### 2. Section 105(a) authority

Section 105(a) provides additional authority for the bankruptcy court to suspend Smyth from practice. Section 105(a) provides:

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

In *Crayton,* the Panel noted that § 105(a) "arguably empowers a bankruptcy court to discipline attorneys who appear before it, given that incompetent attorneys frustrate the [Bankruptcy Code's] purpose of prompt administration of the estate and equitable distribution of assets." 192 B.R. at 976 n. 6. *See also* 1 *Collier on Bankruptcy* ¶ 8.07[1] ("Authority to sanction professionals is found directly in the Bankruptcy Code...."); 2 *Collier on Bankruptcy* ¶ 105.04[7] (Bankruptcy courts also have authority under § 105(a) "to regulate those who appear before it, and what they say and do during that representation."); 2 *Collier on Bankruptcy* ¶ 105.04 ("Courts have used these provisions of section 105 ... to regulate the practice of lawyers.").

Here, the bankruptcy court found that Smyth advanced his contentions in the objection for an improper purpose. The bankruptcy court plainly was distressed by Smyth's conduct in the case, characterizing it as "horrifying" and "reprehensible." The bankruptcy court had authority under § 105(a) to suspend Smyth from practice before the bankruptcy courts of the district as a means to deter him from his *continued* incompetence and unprofessional conduct, to the detriment of bankruptcy administration in the Northern District of California.

### 3. Rule 9011 authority

■ The bankruptcy court undoubtedly had authority under Rule 9011 to impose the suspension sanction against

Smyth.[12] Rule 9011 *"empowers* [bankruptcy] courts to impose sanctions upon the signers of paper where a) the paper is 'frivolous,' or b) the paper is filed for an 'improper purpose.' " *Grantham Bros.*, 922 F.2d at 1441 (emphasis added). In fact, the bankruptcy court is *required* to impose sanctions on the signer of a paper if he or she files a frivolous paper or files a paper for an improper purpose. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir.1991)("Our cases have established that sanctions *must* be imposed on the signer of a paper if either a) the paper is filed for an improper purpose, or b) the paper is 'frivolous.' ")(emphasis added); *Business Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 892 F.2d 802, 809 (9th Cir.1989)("[T]he rule clearly authorizes, *indeed requires,* a judge to sanction a represented party for violations.")(emphasis added). *Accord Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 829 (9th Cir.1994)("Bankruptcy Rule 9011 ... calls for the imposition of sanctions on litigants and attorneys who file pleadings and papers in violation of the rule's requirements.").

▆▆▆ Under Rule 9011(c), if the court determines that an attorney has filed a frivolous paper or has filed a paper for an improper purpose as set forth under Rule 9011(b)(1) or (b)(2), the bankruptcy court may impose an appropriate sanction.[13] The sanction "is limited to what is sufficient to deter repetition of such con-

duct." Rule 9011(c)(2). The sanction may consist of "directives of a nonmonetary nature." *Id.* As we recognized in *Smyth I,* although the "suspension of an attorney from the practice of law is a serious sanction," the bankruptcy court may impose such a sanction for violations of Rule 9011. 329 B.R. at 287 (citing to *Weissman v. Quail Lodge, Inc.*, 179 F.3d 1194, 1197 (9th Cir.1999)).

The bankruptcy court possessed authority under Rule 9011 to suspend Smyth from practice before the bankruptcy courts of the district. The bankruptcy court expressly found—and the Ninth Circuit agreed—that Smyth's assertions in the objection were frivolous. The bankruptcy court also determined that Smyth had filed the objection for an improper purpose, as no reasonable attorney would make such implausible and ridiculous contentions. Recalling that prior sanctions had not deterred Smyth from engaging in unprofessional and incompetent conduct, but recognizing that disbarment would be too severe a sanction, the bankruptcy court decided to suspend him for six months. In making its decision, the bankruptcy court believed that a district-wide suspension sanction, limited in duration, would deter him sufficiently from filing such a frivolous objection again.

The bankruptcy court unquestionably had authority under Rule 9011 to impose a district-wide suspension sanction against

---

**12.** Smyth does not question that the bankruptcy court properly initiated the Rule 9011 proceeding against him. The record plainly shows that the bankruptcy court followed the procedures outlined in Rule 9011. The bankruptcy court issued the OSC and Continuance Order, which detailed Smyth's misconduct and the legal bases under which the bankruptcy court intended to proceed. The bankruptcy court also allowed Smyth an opportunity to respond to the OSC and held a hearing on the OSC.

**13.** Rule 9011(c) specifically provides: "If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation."

Smyth. The question remains, however, as to whether the six-month suspension was an *appropriate* (i.e., reasonable) sanction under the circumstances.

B. Review of the bankruptcy court's imposition of the suspension sanction under the *Crayton* criteria

We stress that the Ninth Circuit determined that the bankruptcy court did not abuse its discretion in *deciding* to impose a sanction against Smyth for his frivolous objection. Smyth does not appear to contest this.

Rather, Smyth claims that the bankruptcy court abused its discretion in reimposing the suspension sanction because it did not consider the factors set forth in *Crayton* (and followed and applied in *Lehtinen* ) to determine its appropriateness. Because the Panel is bound by its prior decisions absent a change in law or a contrary decision from a higher court, *Ball v. Payco–General Am. Credits (In re Ball)*, 185 B.R. 595, 597 (9th Cir. BAP 1995), we must apply the criteria set forth in *Crayton*.[14] Based on our review of the record, we agree with Smyth that the bankruptcy court erred in not explicitly considering the relevant factors to determine the appropriate sanction.

As noted by Smyth, the Panel confronted this issue in both *Crayton* and *Lehtinen*, where the bankruptcy court suspended the attorney from practice for his misconduct.[15] Under *Crayton*, the Panel established three criteria for reviewing attorney disciplinary proceedings: (1) was the disciplinary proceeding fair? (2) does the evidence support the findings below? (3) was the penalty imposed reasonable? *Crayton*, 192 B.R. at 978. The Panel subsequently applied these criteria in *Lehtinen*, 332 B.R. at 414–17, and we recognize their continuing application here.

1. Fairness of the disciplinary proceeding

■ When an attorney is subject to discipline, he or she has a right to notice and an opportunity to be heard. *Crayton*, 192 B.R. at 978. The attorney must receive prior notice of " 'the particular alleged misconduct and of the particular disciplinary authority under which the court

---

**14.** We all share the concerns raised by Judge Markell in his concurrence as to the application of this precedent in this case, but without a change in the law, through legislative enactment or a determination by a higher court, or changes in the rules/procedures governing this Panel, we are bound by our prior decisions.

**15.** In *Crayton*, the bankruptcy court suspended the attorney from practice because he neither sought nor obtained employment as attorney for the chapter 11 debtor. *Crayton*, 192 B.R. at 974. The bankruptcy court accused the attorney of incompetence and prohibited the attorney from practicing in chapter 11 cases. *Id.*

In *Lehtinen*, the bankruptcy court suspended the attorney from practice because he sought employment as both the debtor's bankruptcy attorney and real estate broker without disclosing the potential conflict of interest. *Lehtinen*, 332 B.R. at 409–10. Additionally, the bankruptcy court found that the attorney sent a substitute attorney to the debtor's § 341(a) meeting without obtaining the debtor's consent and failed to appear at the debtor's chapter 13 confirmation hearing. *Id.*

The Panel vacated and remanded the orders imposing the suspension sanctions in both cases on the grounds that the bankruptcy court did not consider the relevant factors to determine whether suspension was an appropriate sanction. *Crayton*, 192 B.R. at 981; *Lehtinen*, 332 B.R. at 417. (In *Crayton*, the Panel also vacated the order imposing the suspension sanction on the grounds that the bankruptcy court did not provide the attorney with notice of its intent to prohibit him from representing debtors in chapter 7 and chapter 13 cases and did not take any evidence as to his fitness to practice in such cases. *Id.* at 979).

is planning to proceed.'" *Lehtinen*, 332 B.R. at 414 (quoting *Miller v. Cardinale (In re DeVille)*, 361 F.3d 539, 548 (9th Cir.2004)).

■ Here, Smyth received adequate notice of his alleged misconduct in the OSC and the Continuance Order. The OSC identified as misconduct Smyth's design of the plan, which the bankruptcy court at the time believed was an attempt "to lull [Oakland] into believing" that the debtor would no longer contest its secured claims and would pay its secured claims in the near future.[16] Order to Show Cause re: Apparent Bad Faith Filing, 4:6–9. The OSC also indicated that the bankruptcy court considered the objection to Oakland's claim filed by Smyth to be "patently frivolous." Order to Show Cause re: Apparent Bad Faith Filing, 3:10–11. The Continuance Order accused Smyth of filing documents that were "intentionally misleading and without basis in fact or law." Order Continuing Order to Show Cause Hearing, 1:17.

Smyth also received notice of his alleged misconduct at the March 18, 2004 hearing in the adversary proceeding. At the hearing, the bankruptcy court warned Smyth "not to file [such] a plan ... again. If [he knew] a claim [was] disputed, [he must] put it in the plan. Let people know. This [was] not a place to trap people." Tr. of March 18, 2004 Hr'g, 23:21–24. The bank-

ruptcy court further told Smyth that it "was frankly horrified by [his] conduct ... in this case" and that it would set the OSC. Tr. of March 18, 2004 Hr'g, 29:11–12.

Smyth further received notice of the authorities on which the bankruptcy court intended to base its sanctions. The OSC stated that the bankruptcy court was considering imposing "serious sanctions" against Smyth, including permanent disbarment. Order to Show Cause re: Apparent Bad Faith Filing, 4:3–5, 5:7–9. Additionally, the Continuance Order specified Rule 9011, § 105 and/or the bankruptcy court's inherent authority to sanction bad faith conduct. Order Continuing Order to Show Cause Hearing, 1:21–25.

Based on the record before us, we conclude that the bankruptcy court afforded Smyth due process.

### 2. Evidentiary support

The bankruptcy court found that Smyth violated Rule 9011(b) by signing and presenting papers containing frivolous assertions and by presenting them for an improper purpose. The record supports the bankruptcy court's findings.

■ To impose a sanction against Smyth under Rule 9011(b), the bankruptcy court must find that he filed papers that are frivolous or for an improper purpose.[17] *Marsch*, 36 F.3d at 829 (internal

---

16. At the May 5, 2004 hearing, the bankruptcy court found that the debtor did not intend to avoid Oakland's lien through the plan at the time he submitted it. Tr. of May 5, 2004 Hr'g, 26:9–10. The bankruptcy court thus ultimately concluded that the debtor did not submit the plan with the intent to mislead Oakland. Tr. of May 5, 2004 Hr'g, 26:10–12.

17. Rule 9011 provides, in relevant part:
 (b) By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented

party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
 (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
 (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law; ....

quotations omitted). A frivolous paper is one that "is both baseless and made without a reasonable and competent inquiry." *Townsend,* 929 F.2d at 1362. That is, it is neither "well-grounded in fact and warranted by existing law [nor] a good faith argument for the extension, modification, or reversal of existing law." *Marsch,* 36 F.3d at 829 (internal quotations omitted). An attorney files a paper for an improper purpose if he or she files it "to harass or to cause unnecessary delay or needless increase in the cost of litigation." *Id.* (internal quotations omitted). While frivolousness and improper purpose are not completely separate considerations, as they often will overlap, "bankruptcy courts must consider both frivolousness and improper purpose on a sliding scale, where the more compelling the showing as to one element, the less decisive need be the showing as to the other." *Id.* at 830 (emphasis in original).

 The bankruptcy court found that the contentions made by Smyth in the objection were frivolous and implausible. Because no reasonable attorney would make such baseless contentions, the bankruptcy court concluded, Smyth filed the objection for an improper purpose. The Ninth Circuit agreed with the bankruptcy court's findings as to the frivolousness of Smyth's assertions in the objection. *Smyth,* 271 Fed.Appx. at 660–61.

The confirmed plan provided that "[t]he debtor will pay off all debts to the City of Oakland by 4/1/4 [sic], through sale or refinance of his real property." The confirmed plan made no mention as to whether Oakland had a secured or unsecured

claim. As the Panel explained in *Smyth I,* the confirmed plan "specifically provided for payment of [Oakland's] claim, without designating it as secured or unsecured. Therefore, when [Oakland] filed its secured claim, that claim could be paid in accordance with the plan." 329 B.R. at 288. The debtor's original schedules also had listed Oakland's claim as secured. The record supports the bankruptcy court's findings.

### 3. Reasonableness of the sanction

The Panel has adopted ABA standards as the means for determining reasonable sanctions. *Crayton,* 192 B.R. at 980; *Lehtinen,* 332 B.R. at 416.[18] The ABA standards, the Panel has asserted, "promote the thorough, rational consideration of relevant factors, and help to achieve consistency when imposing attorney discipline." *Crayton,* 192 B.R. at 980; *Lehtinen,* 332 B.R. at 416 (quoting *Crayton* ). The Panel has determined that "[f]ailure to consider such factors constitutes an abuse of discretion." *Crayton,* 192 B.R. at 980; *Lehtinen,* 332 B.R. at 417 (citing *Crayton* ).

 To determine an appropriate sanction, the bankruptcy court should consider: (1) whether the duty violated was to a client, the public, the legal system or the profession; (2) whether the lawyer acted intentionally, knowingly or negligently; (3) whether the lawyer's misconduct caused a serious or potentially serious injury; and (4) whether aggravating factors or mitigating circumstances exist. *Crayton,* 192 B.R. at 980.

---

18. For the reasons stated by Judge Markell in his concurrence, we all have serious questions as to the appropriateness of requiring explicit consideration of the ABA standards in determining the reasonableness of the suspension sanction imposed by the bankruptcy court. However, as further discussed herein, this Panel stated its reasons for requiring consideration of the ABA standards in *Crayton* and *Lehtinen,* and this Panel is bound by its prior decisions.

■ Aggravating factors include considerations that justify an increase in the degree of discipline imposed, such as a prior disciplinary offense, multiple offenses, a pattern of misconduct, and refusal to acknowledge the wrongful nature of the conduct. *Id.* at 981. Mitigating circumstances include considerations which justify a reduction in the degree of discipline, such as the absence of a prior disciplinary record, personal or emotional problems, inexperience in the practice of law, or a timely good faith effort to make restitution or to rectify the consequences of the misconduct. *Id.*

■ As we mentioned earlier, the Ninth Circuit held that the bankruptcy court did not abuse its discretion in *deciding* to impose sanctions based on its determination that Smyth's assertions in the objection were frivolous. *Smyth,* 271 Fed. Appx. at 660–61. We nonetheless vacate in part the Second Suspension Order and remand to the bankruptcy court for further findings, as it did not explicitly consider the relevant ABA standards to determine the appropriate sanction, as required under *Crayton* and *Lehtinen.*

The bankruptcy court did not elaborate its reasons for reimposing the suspension sanction in the Second Memorandum Decision. Rather, the bankruptcy court simply stated that it reaffirmed its conclusion that suspension was the most appropriate sanction. From this statement, we infer that the bankruptcy court relied on the reasoning it set forth in the First Memorandum Decision.

Reviewing the First Memorandum Decision, the bankruptcy court may have considered aggravating factors in its determination, though it did not explicitly identify them as such. When deciding to impose the six-month suspension as a sanction against Smyth, the bankruptcy court appeared to have considered two factors:

prior disciplinary offenses and a pattern of misconduct. Specifically, it highlighted Smyth's "lengthy history of disciplinary problems" and referenced an earlier sanction imposed against him by another bankruptcy court in the district, that required him to complete forty hours of continuing legal education. First Memorandum Decision, 9:13–14, 9:25–26, 10:1.

Nonetheless, based on our review of the First Memorandum Decision and Second Memorandum Decision, though the bankruptcy court appears to have considered at least one of the ABA standards, it did not address all of them to determine the appropriate sanction. Because it did not consider all of the ABA standards as required under *Crayton,* we must conclude that the bankruptcy court abused its discretion. We therefore remand to the bankruptcy court to determine the appropriate sanction under the ABA standards.

Although the Panel's prior decisions do not require that the bankruptcy court refer the matter to the Standing Committee, *see Crayton,* 192 B.R. at 978; *Lehtinen,* 332 B.R. at 413 (citing *Smyth I,* 329 B.R. at 286), we *strongly* urge the bankruptcy court to do so, to spare itself from having to rehash this stale and exhausting matter. Moreover, by referring the matter to the Standing Committee, the bankruptcy court will avoid the awkward responsibility for serving as "prosecutor and arbiter in the investigation, prosecution and discipline" of Smyth. *Crayton,* 192 B.R. at 978. The referral would permit an independent body of judges to evaluate the appropriate sanction against Smyth under the circumstances. *See id.* at 977–78.

## VI. CONCLUSION

Based on the record before us, we determine that the bankruptcy court erred in imposing the suspension sanction against

Smyth without explicitly considering the relevant ABA factors to determine its appropriateness, as required under *Crayton* and *Lehtinen.* We therefore VACATE in part the Second Suspension Order and REMAND to the bankruptcy court for further findings, with a strong recommendation that it refer the matter to the Standing Committee so that it may decide the appropriate sanction against Smyth in light of his misconduct.[19]

MARKELL, Bankruptcy Judge, concurring.

I reluctantly concur. My reluctance stems not from a disagreement with the majority over its analysis of the case; I cannot fault that. It does not derive from concerns over the scope or import of the majority's words; those also are beyond any serious objection.

Instead, my reluctance comes from discomfort with our long-established rule that, unless changed by a higher court or Congress, we must follow our own precedent, regardless of how flawed it may be. *Concannon v. Imperial Cap. Bank (In re Concannon)*, 338 B.R. 90, 95 (9th Cir. BAP 2006); *Salomon N. Am. v. Knupfer (In re Wind N' Wave)*, 328 B.R. 176, 181 (9th Cir. BAP 2005); *Ball v. Payco–Gen. Am. Credits (In re Ball)*, 185 B.R. 595, 597 (9th Cir. BAP 1995).

Adherence to that rule decides this case. Taken together, *Price v. Lehtinen (In re Lehtinen)*, 332 B.R. 404, 416–17 (9th Cir. BAP 2005) and *Peugeot v. United States Trustee (In re Crayton)*, 192 B.R. 970, 980 (9th Cir. BAP 1996) require a bankruptcy

court to expressly and overtly consider the American Bar Association standards for attorney sanctions.[20] There is no doubt that the bankruptcy court did not cite the ABA standards in its decision. Our prior precedent thus requires reversal.

But blindly applying *Lehtinen* and *Crayton* to the facts of this case leads, I believe, to a result that should offend those who care about how courts operate, or who wish courts to operate rationally. My belief rests on two arguments.

First, *Lehtinen* and *Crayton* are discordant with the agreed standard of review. As the majority correctly states, we review all aspects of a bankruptcy court's decision to impose Rule 9011 sanctions for abuse of discretion. *Valley Nat'l Bank v. Needler (In re Grantham Bros.)*, 922 F.2d 1438, 1441 (9th Cir.1991). This means that a bankruptcy court's decision that conduct is sanctionable is not disturbed unless discretion was abused. More importantly, however, and as also recognized by the majority, this high level of review also applies to the bankruptcy court's choice of sanction. *U.S. Dist. Ct. for E.D. Wash. v. Sandlin*, 12 F.3d 861, 865 (9th Cir.1993). *See also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (in discussing a court's discretionary use of its inherent powers, stating that "[a] primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process.").

As a consequence, there can be no quibble that we must give great deference to

---

**19.** Despite that strong recommendation, we reiterate that the bankruptcy court has the authority, as discussed *supra*, to impose a district-wide disbarment or suspension sanction on an attorney for misconduct and/or incompetence in appropriate circumstances.

**20.** The ABA standards are more formally cited as JOINT COMMITTEE ON PROFESSIONAL SANCTIONS, STANDARDS FOR IMPOSING LAWYER SANCTIONS. They were originally adopted in 1986 and amended in 1992, and the current version bears a copyright date of 2005. The standards can be found at: h ttp://www.abanet.org/cpr/regulation/standards_sanctions.pdf.

the bankruptcy court's decision that specified conduct is sanctionable, as well as to its decision as to what corrective action to take. And that is how it should be. Bankruptcy judges, along with all other federal judges, possess the inherent power to run the type of courtroom that they believe best serves justice, *see Chambers,* 501 U.S. at 43–44, 111 S.Ct. 2123, and that power historically has included the power to suspend attorneys from practice. *E.g., Ex parte Burr,* 22 U.S. (9 Wheat.) 529, 531, 6 L.Ed. 152 (1824).

Despite this standard of review, *Lehtinen* and *Crayton* require that bankruptcy courts mechanically recite and consult the ABA standards. We do not give the bankruptcy court the benefit of the doubt that it consulted but did not mention the standards, nor do we undertake a review of the sanctions imposed to see if we independently conclude that the sanction is within those standards. Such a formulaic review is the antithesis of a review based upon the abuse of discretion standard.

Our position also leads to further unnecessary delay. Once we detect that the ABA standards have not been cited, we simply stop our analysis and send the matter back. Given the deference we admit is due to the bankruptcy court, however, a good case can be made that we should affirm, regardless of whether the court slavishly intoned that the applicable standards were consulted, at least if we can determine that the sanction imposed is consistent with the ABA standards. And if we don't believe that the sanction is

consistent with the ABA standards, we should reverse, thereby resolving the issue once and for all. But for Mr. Smyth, those determinations are for another day; sending the case back in its current status resolves nothing. The upshot of this dithering is that while we say we apply the abuse of discretion standard, we act inconsistently with its purpose and rationale.

My second argument builds on these points: adherence to *Lehtinen* and *Crayton* requires us knowingly to apply precedent that, while binding, doesn't fit the facts or the context of this appeal. Put another way, *Crayton* and *Lehtinen* require, in my view, the use of standards ill-adapted to federal bankruptcy proceedings.

This point is made by the subject matter of this appeal. It involves the imposition of sanctions under federal Rule 9011 and Section 105 of the federal Bankruptcy Code. By contrast, the ABA standards were drafted primarily for use in nonbankruptcy civil litigation under the ABA's Model Rules of Professional Conduct. ABA standards ¶ 1.3.[21]

The ABA Model Rules, however, appear not to apply in this case. Attorneys in the Northern District of California must "comply with the standards of professional conduct required of members of the State Bar of California." N.D. CAL. LOCAL CIV. R. 11–4(a), *incorporated by* N.D. CAL. LOCAL BANKR.R. 1001–2(a). While these state rules are similar to the ABA Model Rules, they differ in several respects.[22] This calls

---

**21.** It is true that the standards expressly indicate that they also may be applied to ascertain appropriate sanctions for violations of "applicable standards under the laws of the jurisdiction where the proceeding is brought." ABA standards § 1.3. But the bulk of the citations in the standards are to the ABA's own rules, not to any variations adopted by individual jurisdictions.

**22.** A leading treatise states that because "the [California] rules of discipline follow the format of neither the Code or the Model Rules, but borrow considerable substance from each," and are layered with "significant statutory regulation ... [this makes] it even more difficult properly to characterize the situation there." 1 GEOFFREY C. HAZARD, JR, W. WILLIAM

into doubt the wisdom of requiring consultation with the ABA standards in all cases, without consideration of the scope of the standards in the first instance.

Further, review and revision of these standards are not in the hands of either Congress or the courts. In addition, there is no showing that the ABA considered bankruptcy's distinctive context when drafting the standards. Given this, it strikes me as incongruous to require that, before a bankruptcy court can impose sanctions under a federal rule, it must recite that it considered standards developed primarily for nonfederal courts by unelected and nonjudicial parties. This is especially troubling when some districts, such as the Northern District of California, have procedures already in place to consider the propriety of suspending an attorney from practice, and those procedures do not require consideration of the ABA standards. N.D. CAL. LOCAL CIV. R. 11–6, *incorporated by* N.D. CAL. LOCAL BANKR.R. 1001–2(a).[23]

The main problem, of course, is our rigid view that we cannot change or alter our prior precedent, even if we think it dead wrong. Although adherence to precedent is a venerable ideal,[24] experience shows that it is unwise to enshrine precedent and never reconsider it.[25] I submit that this is

HODES & PETER R. JARVIS, THE LAW OF LAWYERING § 1.15, at p. 1–26 n. 1 (3d ed.2008).

**23.** The relevant text of the N.D. Cal. Local Rule on discipline follows:

11–6. Discipline.

(a) *General.* In the event that a Judge has cause to believe that an attorney has engaged in unprofessional conduct, the Judge may do any or all of the following:

(1) Initiate proceedings for civil or criminal contempt under Title 18 of the United States Code and Rule 42 of the Federal Rules of Criminal Procedure;

(2) Impose other appropriate sanctions;

(3) Refer the matter to the appropriate disciplinary authority of the state or jurisdiction in which the attorney is licensed to practice;

(4) Refer the matter to the Court's Standing Committee on Professional Conduct; or

(5) Refer the matter to the Chief Judge for her or him to consider whether to issue an order to show cause under Civ. L.R. 11–7.

. . . .

(c) *Standing Committee on Professional Conduct.* The Court will appoint as Special Masters for Disciplinary Proceedings pending before the Court, a Standing Committee on Professional Conduct consisting of seven members of the bar and designate one of the members to serve as Chair of the Committee. The members of the Committee shall continue in office for a period of 4 years. Members shall serve staggered terms, with four of the first appointees serving for 2 years and three members serving for 4 years.

(d) *Discipline Oversight Committee.* The Chief Judge shall appoint three (3) or more Judges to a Discipline Oversight Committee which shall oversee the administration of this Local Rule.

**24.** "For the habit of lightly changing the laws is an evil, and, when the advantage is small some errors both of lawgivers and rules had better be left; the citizen will not gain so much by making the change as he will lose by the habit of disobedience." ARISTOTLE, POLITICS, BOOK II, CH. 8, *reprinted in* THE BASIC WORKS OF ARISTOTLE 1164 (Richard McKeon ed., 1941). The text can also be found on-line at http://clas sics.mit.edu/Aristotle/politics.2. two.html.

**25.** The English House of Lords once held such a view, but jettisoned it after it proved unworkable and unjust. Starting roughly in 1898, the House of Lords declared itself absolutely bound by its prior precedents, and without the ability to decline to follow an admittedly applicable precedent. *See London St. Tramways Co. v. London County Council,* [1898] A.C. 375, 381 (H.L.) (appeal taken from Eng.) (U.K.). *See also Beamish v. Beamish,* (1861) 9 H.L.C. 274, 11 Eng. Rep. 735 (H.L.)(appeal taken from Ir.)(U.K.). In 1966, the House of Lords changed its mind, and did so by way of a simple statement, unconnected with any pending case. *Practice Statement (Judicial Precedent),* [1966] 1 W.L.R. 1234,

a case in which we should take the opportunity to reform or reject *Crayton* and *Lehtinen's* troublesome and potentially irrelevant holdings.

But the odd composition of this court[26] and the lack of any procedure, such as an en banc rule, to reconsider our prior decisions effectively ensconce our precedents as if they were infallible.[27] This itself is wrong—as John Maynard Keynes once remarked, "When the facts change, I change my mind. What do you do, sir?"[28]

But as we have bound ourselves to follow such a procedure, I cannot fault the majority when it faithfully implements it. I thus concur.

1234 (H.L.) (stating that "too rigid adherence to precedent may lead to injustice in a particular case" and asserting ability to "depart from a previous decision when it appears right to do so.").

26. By statute, we are a "bankruptcy appellate panel service," a phrase that does not contain the word "court." 28 U.S.C. § 158(b)(1). But the six judges who are appointed to this service assuredly are a court for purposes of considering the wisdom of prior precedent. The relevant statute requires this service to be staffed by "bankruptcy judges of the districts in the circuit who are appointed by the judicial council" and then gives those judges— that is, the entire panel—the power "to hear and determine, with the consent of all the parties, appeals. . . ." *Id.*

The power to hear such appeals and then to enter binding judgments vests in us judicial power. That power is the essence of being a court. Indeed, if we did not have any judicial power or were not a court, our collective adoption of court-developed rules, such as the rule that we cannot overturn prior precedent, would have no recognized rationale.

For a good recent examination of the constitutional status of bankruptcy judges, *see* Tuan Samahon, *Are Bankruptcy Judges Unconstitutional? An Appointments Clause Challenge*, 60 HASTINGS L.J. 233 (2008).

27. I obviously refer only to precedents of this court; we do not have the power or authority to ignore binding Ninth Circuit or Supreme Court precedent. *Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir.2001) ("A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue, or with Supreme Court Justices writing for a majority of the Court. . . . Binding authority must be followed unless and until overruled by a body competent to do so."). *See also IRS v. Osborne (In re Osborne)*, 76 F.3d 306, 309 (9th Cir.1996).

28. This remark reportedly was in response to criticism that he had changed his mind on monetary policy during the Depression. ALFRED L. MALABRE, LOST PROPHETS: AN INSIDER'S HISTORY OF THE MODERN ECONOMISTS 220 (1994).