**NOT FOR PUBLICATION**

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: ) | BAP No.   CC-13-1407-KiTaD |
| ) | |
| YOUNG W. KONG, ) | Bk. No.   2:11-48629-BR |
| ) | |
| Debtor. ) | Adv. No.   2:12-01007-BR |
| ) | |
| _____ ) | |
| ) | |
| YANG JIN CO., LTD., a Korean ) | |
| Corporation, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| YOUNG W. KONG, ) | |
| ) | |
| Appellee. ) | |
| _____ ) | |

Argued and Submitted on March 20, 2014,
at Pasadena, California

Filed - April 14, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances:   David B. Lally, Esq. argued for appellant, Yang
Jin. Co., Ltd.; Shi Young Lim, Esq. of Park & Lim
argued for appellee, Young W. Kong.

Before: KIRSCHER, TAYLOR and DUNN, Bankruptcy Judges.

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Appellant, creditor Yang Jin Co., Ltd. ("YJ"), appeals an order finding in favor of appellee, chapter 7[2] debtor Young W. Kong ("Mr. Kong"), on YJ's claims seeking to deny Mr. Kong's discharge under § 727(a)(2), (a)(3), (a)(4) and (a)(5). YJ also appeals the bankruptcy court's ruling that the deposition testimony of Mr. Kong's wife would be allowed in lieu of her live testimony under Civil Rule 32(a)(4)(C). We AFFIRM.

We begin by noting the troubling inadequacies with YJ's excerpts of record and appellate brief. As appellant, YJ has the responsibility to provide an adequate record on appeal. Kritt v. Kritt (In re Kritt), 190 B.R. 382, 387 (9th Cir. BAP 1995). YJ's record fails to include a copy of its complaint, Mr. Kong's answer, any of the parties' trial briefs, copies of Mr. Kong's admitted trial exhibits, and the notice of appeal — all in violation of Rule 8009. YJ's excerpts of record are also not continuously paginated, in violation of 9th Cir. BAP Rule 8009(b)-1(b)(2), which perhaps explains why its brief utterly fails to cite to the record as required by Rule 8010(1)(E).

While Mr. Kong provided some of these missing items,[3] his brief and excerpts of record suffer from their own shortcomings. His record includes trial exhibits expressly disallowed by the

[2] Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

[3] For those documents neither party submitted on appeal, we exercised our discretion to review them from the bankruptcy court's electronic docket. See O'Rourke v. Seaboard Sur. Co. (In re E.R. Fegert, Inc.), 887 F.2d 955, 957-58 (9th Cir. 1989); Atwood v. Chase Manhattan Mortg. Co. (In re Atwood), 293 B.R. 227, 233 n.9 (9th Cir. BAP 2003).

bankruptcy court (rulings which he has not cross-appealed), and his opening brief inappropriately refers to paragraphs of his declaratory testimony that were excluded at trial. Needless to say, the parties have made it difficult for the Panel to address the merits of this appeal, such as they are.

Most importantly, while YJ asserts fourteen issues on appeal in its statement of the issues presented, the argument portion of its opening brief, which consists of a mere three pages, provides, at best, argument relating to only two of them — the bankruptcy court's decision to allow Mrs. Kong's deposition testimony in lieu of her live testimony and the court's decision to deny YJ's claim under § 727(a)(2)(A). Accordingly, we address only these issues. All other issues raised but not properly briefed have been abandoned. Branam v. Crowder (In re Branam), 226 B.R. 45, 55 (9th Cir. BAP 1998), aff'd, 205 F.3d 1350 (9th Cir. 1999)(an issue not adequately addressed by appellant in its opening brief is deemed abandoned).[4]

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A.    Prepetition events**

**1.    Royal Liquor Mart**

Mr. Kong and his non-debtor wife, Minshin Clara Kong fka Soon Ouk Kong, immigrated to the United States from Korea in 1987. They were married in 1980. It is undisputed that the Kongs have never entered into any agreement regarding ownership of assets.

In 1988, the Kongs purchased a liquor store called Royal

---

[4] For this same reason, we also disregard the oral argument counsel for YJ presented regarding the bankruptcy court's decision in favor of Mr. Kong on YJ's claim under § 727(a)(4).

-3-

Liquor Mart, located on W. Adams Blvd. in Los Angeles, California. The Kongs testified that Royal Liquor Mart was purchased with funds given as gifts from Mrs. Kong's father who lives in Korea. Initially, the Kongs owned and operated Royal Liquor Mart together as a partnership under the fictitious business name Royal Liquor Mart. The Kongs continued to own Royal Liquor Mart as a partnership until about January 2007, but Mr. Kong ceased managing the store with Mrs. Kong in about 1990, when he opened a mortgage brokerage business. Mr. Kong testified at trial that after 1990, he helped Mrs. Kong with the store on weekends, running errands, etc.

### 2. Mr. Kong's business ventures

In 1995, Mr. Kong began operating his first garment business. By 2006, Mr. Kong owned FSI Greenwest Activewear, Inc. ("FSI"), a garment production business, and Fashion Solutions Guatemala, S.A. ("FSG"), a Guatemalan entity that owned and operated a sewing factory in Guatemala.

In 2006, YJ agreed to invest $1 million in Mr. Kong's businesses. YJ and Mr. Kong formed the entity Greenwest, LLC ("Greenwest"), which was jointly owned by Mr. Kong, FSI and YJ's wholly owned subsidiary, YJ West Corp. Mr. Kong invested 99% of his FSG shares into Greenwest, FSI invested all of its assets into Greenwest, and YJ through YJ West Corp. invested $1 million into Greenwest.

In mid-2006, Mr. Kong learned that a Guatemalan dyeing factory known as World Fama was for sale. In late 2006/early 2007, Greenwest, YJ, and Lekos Dye & Finishing, Inc., another entity in which Mr. Kong held a 33% ownership interest ("Lekos"),

-4-

formed a California entity called LA Guatemala Partnership, LLC ("LAG"),[5] and a Guatemalan entity called LA USA Dyeing & Finishing, S.A. ("D&F"). LAG was the 100% shareholder of D&F, and D&F purchased the assets of World Fama.

Due to disputes with YJ, Mr. Kong resigned from his positions as CEO of D&F and as manager of LAG in June 2008. Since June 2008, Mr. Kong has not been involved in any of the operations of D&F or LAG.

FSG and Greenwest ceased operations in June and August 2008, respectively. In November 2009, a Guatemalan bank sold the real property owned by FSG and applied the sale proceeds to FSG's outstanding portion of the loan. FSG's remaining assets were also sold and disposed of by the Guatemalan bank.

On September 9, 2008, Mr. Kong formed a new entity called GGFB, LLC ("GGFB"). He is the sole owner. In lieu of a salary, GGFB pays for Mr. Kong's monthly living expenses.

Sometime in mid- to late 2008, Greenwest's business loans with Nara Bank went into default. On December 31, 2008, Nara Bank and Greenwest entered into a forbearance agreement, under which Nara Bank agreed to forbear from seeking to enforce its rights under two promissory notes in exchange for Greenwest agreeing to pledge the additional collateral of the assets of Royal Liquor, LLC and GGFB (and other entities) for the loans. Greenwest also executed two new promissory notes in the principal amounts of

---

[5] The jury in the state court action YJ filed against Mr. Kong found that Mr. Kong individually was a member of the joint venture LAG. Mr. Kong disputed this and maintains that his company, Greenwest, as opposed to him individually, was a member of LAG.

$3,463,340.11 and $738,809.87. The $738,809.87 note required Greenwest to make 72 monthly payments of $2,500, plus one last payment of the remaining balance.

At the foreclosure sale of Greenwest's remaining assets, GGFB, the only bidder, acquired the assets for $10,000. As part of the asset purchase, GGFB took over the obligation of making Greenwest's $2,500 monthly payments to Nara Bank. Some of these payments were initially made by Mrs. Kong, but the rest have since been paid by GGFB.

In August 2009, YJ and Lekos agreed to terminate LAG. On August 12, 2009, Insang Grant Won, manager of LAG, filed a Certificate of Cancellation of LAG, thereby causing LAG to become a cancelled limited liability company. Mr. Kong alleged this was done without the consent of Greenwest.

### 3. Formation of Royal Liquor, LLC by Mrs. Kong

On January 4, 2007, Mrs. Kong formed Royal Liquor, LLC, which now owns Royal Liquor Mart. Mr. Kong testified both in his declaration and at trial that since January 4, 2007, Mrs. Kong has been the sole owner of Royal Liquor, LLC, and that as of that date, he has had no community interest in the entity. Mrs. Kong testified at her deposition that she was the sole owner of Royal Liquor, LLC. The bankruptcy court admitted into evidence the couple's federal joint tax returns for the years 2007-2009; they indicate that Royal Liquor, LLC was solely Mrs. Kong's business. In 2010, Mr. and Mrs. Kong began to file separate federal tax returns, and Mr. Kong's 2010 tax return did not include any income from Royal Liquor, LLC.

////

**4. State court litigation with YJ**

On December 4, 2008, YJ filed a lawsuit against Mr. Kong, Greenwest and others relating to its investment in and the operations of their joint venture LAG and D&F. Among other claims, YJ asserted claims for breach of contract, fraud, negligent misrepresentation, breach of fiduciary duty and conversion. YJ alleged that Mr. Kong had devised a scheme to defraud YJ and convert its investments made in his related companies.

After a two-week trial in February 2011, the jury returned a verdict in favor of YJ for $4.7 million. A judgment was entered by the state court on April 20, 2011.

**5. Operations of GGFB**

Fineman West & Company, LLP is GGFB's accountant. According to GGFB's financial statements prepared by Harold West, CPA, and admitted through the declaration of Stella K. Park, Esq., counsel for YJ, in 2009 GGFB had net sales of $991,284 and a net loss of $46,936, in 2010 GGFB had net sales of $4,373,700 and net income of $18,252, and in 2011 GGFB had net sales of $4,147,821 and a net loss of $43,675.

**6. Formation of Adams LLC by Mrs. Kong**

At her deposition, Mrs. Kong testified that Royal Liquor, LLC had an agreement with its landlord, that in the event the landlord decided to sell the real property where the liquor store was located, Royal Liquor, LLC would have the first right of refusal to purchase it. In late 2010, the landlord informed Mrs. Kong that he intended to sell the real property ("Adams Property") for $530,000. Because her lease was about to expire and she feared a

-7-

new landlord would raise her rent, Mrs. Kong decided to purchase the Adams Property.

To facilitate the purchase of the Adams Property, on October 1, 2010, Mrs. Kong formed 5472 Adams, LLC ("Adams LLC"). The Statement of Information filed with the California Secretary of State reflects that Mrs. Kong is the manager of Adams LLC.

On or about February 17, 2011, Adams LLC purchased the Adams Property for $530,000. Mrs. Kong testified at her deposition that she provided a down payment of about $130,000, which consisted of money from her family in Korea and funds from her money market account. Mr. Kong testified in his declaration that he had no community property interest in Adams LLC or the Adams Property; he further asserted that the money used to purchase the Adams Property was Mrs. Kong's personal funds and funds from an SBA loan, for which she and Royal Liquor, LLC are the sole guarantors.

**7. Filing of the divorce petition**

Due to the financial burdens caused by Mr. Kong's business ventures, the Kongs began to have marital problems in 2008. On September 13, 2011, Mrs. Kong, with the assistance of counsel, filed a petition for dissolution of marriage. The separation date was listed as March 2, 2011. Notably, the petition lists only two assets — Royal Liquor, LLC and Adams LLC — both of which Mrs. Kong claimed were her separate property. The petition did not list any community assets belonging to the marital estate. Mr. Kong testified that he moved out of their marital home ("Residence") in March 2011.

In or about February 2013, Mrs. Kong was diagnosed with stage 4 lung cancer. Mr. Kong testified in his declaration that

-8-

due to Mrs. Kong's health problems, the divorce proceedings have been put on hold. Mr. Kong has never filed a response to the dissolution petition. However, Mr. Kong at trial, and Mrs. Kong at her deposition, testified that based on Mrs. Kong's filing of the dissolution petition, they thought the divorce was final.

**B. Postpetition events**

**1. The chapter 7 filing**

Mr. Kong filed an individual chapter 7 bankruptcy case on September 23, 2011. In his Schedule A, Mr. Kong listed a fee interest in the Residence valued at $0, with a secured claim for $4,554,729. His Schedule D reflected that Citimortgage, Inc. held a first deed of trust against the Residence for $554,729, and that Nara Bank held a second deed of trust against the Residence for $4 million.[6]

In his Schedule B, Mr. Kong listed his 78% interest in Greenwest and his 100% interest in FSI, valuing both interests at $0.

Mr. Kong stated in his Schedule I that his monthly income from GGFB was $2,500. However, he later testified that GGFB did not pay him a fixed monthly salary of $2,500, but instead pays for his living expenses; $2,500 was an estimate of the amount GGFB paid him as of September 2011. He further testified that since filing his petition in September 2011, GGFB's business had improved, and the amount of current monthly expenses provided to him by GGFB had increased to $4,500 per month, which paid for

---

[6] The chapter 7 trustee later filed a notice of intent to abandon the Residence because of its inconsequential value to the estate.

rent, gas, utilities, food, legal fees, health insurance and other personal expenses.

On December 6, 2011, Mr. Kong filed an amended Schedule B to report his previously omitted 100% interest in GGFB, which he valued as "unknown." In his amended statement of financial affairs, Mr. Kong stated that GGFB was currently suffering a $150,000 loss for 2011.

**2. YJ's adversary complaint and discovery**

YJ filed a complaint against Mr. Kong on January 3, 2012, seeking to except its debt from discharge under § 523(a)(2), (a)(4) and (a)(6), and seeking to deny Mr. Kong's discharge under § 727(a)(2), (a)(3), (a)(4) and (a)(5). The claims were bifurcated, and the bankruptcy court ordered that trial on YJ's § 727 claims would proceed first.

In response to YJ's subpoena, Mrs. Kong appeared for her deposition on August 14, 2012, at the offices of YJ's counsel. The record shows that all questioning of Mrs. Kong was conducted by counsel for YJ.

**3. The Trial Procedures Order and the Joint Pretrial Order**

The bankruptcy court entered a Trial Procedures Order ("TPO") on February 7, 2013. Per the TPO, all direct testimony from witnesses had to be submitted by declaration and, for the declaration to be admissible, the declarant had to be present at trial and subject to cross-examination. See Section 1(e). Section 1(d) of the TPO stated that if a party was unable to obtain the declaration of a witness, counsel for that party was required to file a declaration providing the name of the witness, a detailed summary of the expected testimony, and why counsel was

-10-

unable to obtain the witness's declaration. Section 1(d) further stated that if a party intended to present the witness's testimony by his or her deposition transcript, only those portions of the transcript intended to be offered were to be attached to its counsel's declaration.

Also on February 7, 2013, the parties filed their Revised Joint Pretrial Order. Notably, no facts asserted by either side were agreed admitted. Rather, each party "reserved" objections to the other party's asserted facts. The only witnesses to be called at trial were Mr. and Mrs. Kong.

**4. The trial briefs and learning of Mrs. Kong's illness**

For its claim under § 727(a)(2)(A), YJ contended that Mr. Kong: (1) concealed his community property interest in Royal Liquor, LLC and Adams LLC; (2) failed to produce any books and records for Adams LLC or the Adams Property; (3) concealed the real value of GGFB; and (4) concealed and failed to disclose his interest in Lekos, FSG, D&F and LAG.

Sometime in February or March 2013, the Kongs informed their counsel that Mrs. Kong was suffering from stage 4 lung cancer. David Lally, Esq., counsel for YJ, admitted that he learned of Mrs. Kong's illness in March 2013. Trial Tr. (May 29, 2013) 169:10-12. In an email dated April 9, 2013, Ms. Park, co-counsel for YJ, informed counsel for the Kongs, Shi Young Lim, Esq., that she wanted to take a preservation deposition of Mrs. Kong in the event that she became unavailable to withstand trial in May 2013. In response, Mr. Lim stated that he was willing to stipulate as to Mrs. Kong's unavailability for trial pursuant to Civil Rule 32(a) and, in accordance with Civil Rule 32(a)(4)(C), he authorized YJ

-11-

to use Mrs. Kong's deposition testimony in lieu of her live testimony. Mr. Lim declined, however, Ms. Park's request for a second deposition of Mrs. Kong. No further emails are in the record, but Mr. Lally, co-counsel for YJ, stated at trial that his firm had served Mrs. Kong with a subpoena on April 10, 2013, for her to appear at trial. Id. at 9:16-21. YJ apparently took no further action to depose Mrs. Kong.

Mr. Kong filed his trial brief on April 17, 2013. To refute YJ's claim under § 727(a)(2)(A), Mr. Kong argued the evidence showed that both Royal Liquor, LLC and Adams LLC were Mrs. Kong's separate property. Further, YJ had failed to prove that any community interest Mr. Kong may have had in Royal Liquor, LLC was transferred within one year of the filing of his bankruptcy petition.

As for his alleged failure to produce books for Adams LLC or the Adams Property, Mr. Kong argued that YJ never asked for any documents relating to Adams Property. Even if it had, Mr. Kong argued that failure to produce these documents did not support denial of his discharge under § 727(a)(2)(A). Mr. Kong also argued that he did not "conceal the real value of GGFB" as YJ alleged. Not knowing the value of GGFB and listing it as "unknown" was not the same as concealing an ownership interest in it, which is required for a claim under § 727(a)(2)(A).

Finally, as for his alleged concealment of his interest in Lekos, FSG, D&F and LAG, Mr. Kong admitted that he inadvertently failed to disclose his 33% interest in Lekos, but this was only because he had pledged his stock certificates to Nara Bank as additional collateral for the loans, and he considered Nara Bank

-12-

to be the owner of the Lekos stock. Nonetheless, argued Mr. Kong, YJ had failed to present any evidence that he disposed of his ownership interest in Lekos through a transfer or concealment within one year of the filing of his bankruptcy petition. Further, YJ was fully aware of Mr. Kong's interest in Lekos, so failing to disclose it could not have been to hinder, delay or defraud YJ. As for FSG, Mr. Kong contended that YJ had not presented any evidence that he disposed of his ownership interest in FSG through a transfer or concealment within one year of filing for bankruptcy. Moreover, FSG's real property was sold at a foreclosure sale and it no longer conducted any business. As for D&F and LAG, Mr. Kong contended that he had zero interest in D&F because it was wholly owned by LAG and that he never had an interest in LAG, but, even if he did, that entity had not existed since 2009. In any event, argued Mr. Kong, YJ had no evidence that he disposed of these interests within one year of the filing of his bankruptcy petition.

Along with his trial brief, Mr. Kong offered his declaration and a declaration from Mr. Lim. Mr. Lim's declaration purported to introduce certain portions of the deposition transcript of Mrs. Kong and to describe her testimony. Mr. Lim's declaration failed to explain why he was offering Mrs. Kong's deposition testimony and why no trial declaration was filed on her behalf, as required by the TPO.

YJ filed its evidentiary objections to the declarations of Mr. Kong and Mr. Lim on May 8, 2013. For Mr. Lim, YJ argued that he was not on the witness list and that his attempt to introduce portions of Mrs. Kong's deposition transcript violated the local

-13-

rules and the TPO, because Mrs. Kong was required to file a declaration and appear for testimony if evidence from her was to be presented. Therefore, argued YJ, none of Mrs. Kong's deposition testimony could be introduced.

### 5. Trial on the 727 claims

The bankruptcy court held a two-day trial on YJ's § 727 claims on May 29 and 30, 2013. As a preliminary matter, the court discussed YJ's evidentiary objections to Mr. Lim's declaration and opined that Mrs. Kong's deposition transcript was inadmissible hearsay. Mr. Lim informed the court that Mrs. Kong had cancer and was being treated with chemotherapy. The court noted that no evidence as to Mrs. Kong's unavailability was before it so that her deposition could be used per Civil Rule 32. Mr. Lim then informed the court about the April 9 email between counsel discussing Mrs. Kong's unavailability and the offer to use her deposition testimony at trial. Ms. Park explained that since Mr. Lim would not stipulate to the preservation deposition of Mrs. Kong so that YJ could cross-examine her, YJ would not stipulate to Mrs. Kong's unavailability. The court noted the dilemma, but stated that if her deposition testimony was going to be used, the court would have to find that she was unavailable, and it could not make that finding based on the record. For the moment, the court decided to sustain YJ's objection. Mr. Kong was then called to testify.

After a brief recess, Mr. Lim informed the bankruptcy court that Mrs. Kong was on her way to the courthouse with the help of a third party, and that she would authenticate records and testify about her chemotherapy treatment. However, Mr. Lim stated that he

was not sure how Mrs. Kong's memory would be, due to the medications she was taking. Mr. Lally reserved his objections for when Mrs. Kong arrived. Mr. Kong was then recalled to the stand for further testimony.

Mrs. Kong arrived at the court and Mr. Lim proceeded to call her to the stand. Mr. Lim stated that he wanted Mrs. Kong to testify as to her unavailability based on the medications she was taking, which affected her memory. The court noted that Mr. Lim was in a "catch 22" because Mrs. Kong was at least "somewhat available" to testify that she was "unavailable." And if she was available, then she should have filed a declaration, but since she did not, then her testimony would not be allowed. Trial Tr. (May 29, 2013) 131:22-132:18. Mr. Lally noted YJ's objection to allowing Mrs. Kong's deposition testimony into evidence, saying that it would be a "trial by surprise, which [was] prejudicial to [his] client." Id. at 133:7-134:6.

Mrs. Kong was questioned briefly by both Mr. Lim and the bankruptcy court. Mr. Lally declined to ask Mrs. Kong any questions, noting that doing so would violate the TPO. Mrs. Kong was then excused. Mr. Lim explained to the court that Mrs. Kong was not diagnosed with stage 4 lung cancer until after the TPO had been entered, and he felt it was unethical to have her sign a declaration under the penalty of perjury knowing she was on medications affecting her mind. The court decided to "think about this for awhile" and reserved its ruling. Id. at 142:1-5. Testimony continued with Mr. Kong and a rebuttal witness for YJ.

After hearing further argument from counsel, the bankruptcy court found that, based on its observation of her, Mrs. Kong was

-15-

"unavailable" and unable to withstand any serious cross-examination. Id. at 171:8-18. Mr. Lally argued that Mrs. Kong's deposition testimony should not be allowed, and that Mr. Lim had other alternatives. For example, he could have moved to amend the TPO. The court replied, that is what Mr. Lim was essentially doing now. Id. at 171:24-25.

After considering additional argument from YJ, the bankruptcy court changed its ruling and overruled YJ's objection to admitting Mrs. Kong's deposition testimony into evidence:

> Well . . . I'm going to rule on two things. That's why I have run this through of my own mind. I never had this happen before and I hope for various reasons it never happens again. But I'm going to allow the – I'm going to overrule those objections to the deposition.

> The reason is that talk about fairness. It's not – it was not perfect. It was not done perfectly well by counsel here, but I understand why you didn't have her sign the declaration knowing full well that under medication she might not be accountable for it and also the high likelihood that she wouldn't – that she would not be able to testify in any case. So even if there had been technical compliance with the rule we'd be in the same position now.

> So now I have to balance the fact that Rule 32 is Rule 32. People die. They get in accidents. All sorts of things happen and it's not uncommon at all. And particularly 32 is what we're talking about. The witness is unavailable, that that's – you know, as long as there is full opportunity to cross examine – and clearly there was – that that's admissible. So I have never heard of the term, you know, preservation. The concept you might want to add something. But in all fairness, that's what Rule 32 is all about and indeed that had already occurred.

> So I have to weigh here a situation where – a very unfortunate personal situation for Mrs. Kong and she's clearly unavailable at this point even if she had filed a declaration. And so let's say . . . even if she had filed one it wouldn't be admissible because she could not be here to be cross examined. So if that were the case – if counsel had filed a declaration we'd be right back where we are now. Okay, that's not admissible because she can't testify. Is there any other evidence that is?

-16-

And that's what Rule 32 is.

So it seems to me in running it through, I don't see any great unfairness to the plaintiff in this case. You already had the opportunity and no one suggested it's not admissible under Rule 32. There's a fair opportunity with the same motives. I mean, that's what this deposition was all about. So I am going to change my ruling on that and this will be really – I said it's never happened before. I'm repeating myself, but I think in all fairness I don't see the unfairness to the plaintiff and Rule 32 is what it is, so I'm going to allow . . . we're only talking about those portions.

Id. at 173:12-175:5. Accordingly, the portions of Mrs. Kong's deposition attached to Mr. Lim's declaration were admitted. Mr. Lally then introduced into evidence the portions of her deposition transcript YJ had submitted with Ms. Park's declaration.

After summation on May 30, 2013, the bankruptcy court gave its oral ruling from the bench, finding in favor of Mr. Kong on all of YJ's § 727 claims. As for YJ's § 727(a)(2)(A) claim, the court found that Mr. Kong did not fail to disclose a community property interest in Royal Liquor, LLC. That entity became Mrs. Kong's separate property in 2006, so Mr. Kong had no interest in it at the time he filed his bankruptcy petition. Trial Tr. (May 30, 2013) 74:10-18. The court noted that the "only [claim] that would actually qualify potentially under 727(a)(2) is the actual transfer. That would be Adams[.]" Id. at 74:18-20. However, the court found that, based on the evidence, the money used to buy the Adams Property was Mrs. Kong's. As for Mr. Kong's nondisclosure of his 33% interest in Lekos, the court found that while Mr. Kong did not list it, he is not in control of Lekos, and that he did not intend to deceive YJ by not listing it. As for Mr. Kong's alleged failure to list the actual value of GGFB, the

-17-

court found that providing a value of "unknown" was not a lie. "I'm not sure anybody, including myself here, after listening to the testimony, could figure out what in the world [GGFB] is actually worth but it was disclosed." Id. at 75:24-76:1.

After filing its notice of appeal on August 21, 2013, YJ stipulated to dismiss its § 523 claims with prejudice. The bankruptcy court entered an order approving the stipulation on September 4, 2013. On September 12, 2013, the bankruptcy court entered an order ruling that Mr. Kong was entitled to discharge. YJ's notice of appeal was deemed timely upon entry of the discharge order on September 12. Rule 8002(a).

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUES

1. Did the bankruptcy court abuse its discretion when it determined that Mrs. Kong was unavailable and allowed her deposition testimony in lieu of her live testimony?

2. Did the bankruptcy court deny YJ due process when it allowed Mrs. Kong's deposition testimony despite the TPO?

3. Did the bankruptcy court err when it determined that YJ had not proved its claim under § 727(a)(2)(A)?

## IV. STANDARDS OF REVIEW

We review for abuse of discretion the bankruptcy court's decision to admit deposition testimony under Civil Rule 32(a)(4)(C). See Nationwide Life Ins. Co. v. Richards, 541 F.3d 903, 909 (9th Cir. 2008)(analyzing Civil Rule 32(a)(4)(B)).

A trial court's evidentiary rulings are reviewed for abuse of

-18-

discretion. United States v. Waters, 627 F.3d 345, 351 (9th Cir. 2010). To reverse an evidentiary ruling, we must conclude both that there was an abuse of discretion and that the error was prejudicial. Johnson v. Neilson (In re Slatkin), 525 F.3d 805, 811 (9th Cir. 2008)(citation omitted). A bankruptcy court abuses its discretion if it applies the wrong legal standard or its factual findings are illogical, implausible or without support in the record. TrafficSchool.com v. Edriver Inc., 653 F.3d 820, 832 (9th Cir. 2011).

Due process issues are reviewed de novo. In re Brooks-Hamilton, 400 B.R. 238, 245 (9th Cir. BAP 2009).

In an action for denial of discharge, we review: (1) the bankruptcy court's determinations of the historical facts for clear error; (2) its selection of the applicable legal rules under § 727 de novo; and (3) its application of the facts to those rules requiring the exercise of judgments about values animating the rules de novo. Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004)(citation omitted), aff'd, 212 F. App'x. 589 (9th Cir. 2006). Factual findings are clearly erroneous if illogical, implausible, or without support in the record. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010)(citation omitted).

## V. DISCUSSION

**A. The bankruptcy court did not abuse its discretion or deny YJ due process when it allowed Mrs. Kong's deposition testimony in lieu of her live testimony.**

Civil Rule 32, made applicable here by Rule 7032, governs the use of deposition testimony during trial. Civil Rule 32(a)(4) allows any party to use the deposition of a witness, whether or

-19-

not a party, in lieu of live testimony, in certain specified circumstances relating to the unavailability of a witness or the inability to compel attendance. Under Civil Rule 32(a)(4)(C), a party may use the deposition of a witness at a hearing or trial if the court finds "that the witness cannot attend or testify because of age, illness, infirmity, or imprisonment."

Due to the nature of its brief, we are unclear whether YJ disputes the bankruptcy court's finding that Mrs. Kong was "unavailable" for purposes of Civil Rule 32(a)(4)(C) or whether YJ's focus is more on the court's decision to modify its TPO by allowing the deposition transcript. In any event, we see no abuse of discretion with the court's finding that she was "unavailable." After questioning Mrs. Kong and observing her behavior in the courtroom, the court determined that Mrs. Kong was unavailable for trial on the ground that she was ill, and therefore her deposition testimony would be allowed in lieu of live testimony.

YJ contends that allowing Mrs. Kong's deposition testimony, without notice to YJ, violated its due process rights and was contrary to the bankruptcy court's own procedures set forth in the TPO. YJ asserts that it was impossible for it to have known that the court would have allowed any testimony from Mrs. Kong since she did not file the required declaration for trial.

Arguably, this situation may only occur because of conducting trials by using testimonial declarations. While it may be a time-saving device and creates no issues in most cases, it has the potential of obviating a party's ability to use deposition testimony under Civil Rule 32. If a witness is unable to file a declaration just prior to trial due to illness or some other

specified reason enumerated in Civil Rule 32(a)(4), the witness's testimony — either direct or cross-examination — will not be allowed into evidence, pursuant to Section 1(e) of the TPO, unless a party's counsel complies with Section 1(d) of the TPO and files a declaration for the witness giving a detailed summary of the expected testimony and stating why counsel was unable to obtain the witness's declaration.

Counsel failed to comply fully with Section 1(d) of the TPO. Mr. Lim provided a detailed summary of Mrs. Kong's testimony in his declaration, but he failed to explain why he was unable to obtain her declaration and why her deposition testimony had to be used. He tried to fix his error by orally moving to modify the TPO at the start of trial. Nonetheless, YJ was on notice that Mrs. Kong was ill at least six weeks (if not more) before trial, and that her deposition transcript would likely be necessary if she were to testify in this case. YJ also had a fairly good understanding as to what her testimony would be because YJ deposed her for an entire day, and Mr. Kong's trial brief and Mr. Lim's declaration, both filed six weeks before trial, set forth precisely what her testimony was. Therefore, we cannot conclude that YJ was "sandbagged and surprised" and denied due process (assuming that legal theory even applies here) when the bankruptcy court modified the TPO and admitted Mrs. Kong's deposition testimony into evidence; YJ was given the opportunity to examine her at her deposition. See Lear v. Equitable Life Assur. Soc'y of U.S., 798 F.2d 1128, 1135 (8th Cir. 1986)(trial court has broad discretion concerning use of depositions under Civil Rule 32 and appellate court will not reverse "unless, in the totality of the

-21-

circumstances, its rulings are seen to be a gross abuse of discretion resulting in fundamental unfairness").

More importantly, YJ has failed to show that it was prejudiced. When an appellant offers no evidence of prejudice, any deficiency in providing due process to the appellant is harmless. See Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764, 776 (9th Cir. 2008)(citing Rule 9005). YJ contends that allowing Mrs. Kong's deposition testimony constituted reversible error because the bankruptcy court referenced her transcript in making its ruling. YJ fails to identify which finding or which portion of Mrs. Kong's deposition testimony was relied upon by the court for finding against YJ on any of its claims. The only relevant finding the court could have made based on her testimony is that Adams LLC and the Adams Property were her separate property. While Mrs. Kong presented testimony on this issue, so did Mr. Kong. Although certain paragraphs of his declaration testifying about Adams LLC and the Adams Property and the exhibits supporting that testimony were not allowed into evidence, Paragraph 68 of his declaration was allowed. There, Mr. Kong testified that he had no community property interest in Adams LLC or the Adams Property, that the money used to purchase the Adams Property was a combination of Mrs. Kong's funds and an SBA loan, and that Mrs. Kong and Royal Liquor, LLC were the sole guarantors on the SBA loan. Further, the document submitted by YJ entitled "Real Property Transaction Record" indicates that the Adams Property was purchased by Mrs. Kong. YJ offered no evidence to the contrary, but only legal argument that presumptively Adams LLC and the Adams Property were community property because they were

-22-

formed and/or purchased during the marriage.

Therefore, even if the bankruptcy court erred by allowing Mrs. Kong's deposition testimony into evidence, the error was not prejudicial because other evidence in the record supported its finding that Adams LLC and the Adams Property were Mrs. Kong's separate property.

**B.    The bankruptcy court did not err when it determined that YJ had not proved its claim under § 727(a)(2)(A).**

In the spirit of the "fresh start" principles that the Code embodies, claims for denial of discharge are liberally construed in favor of the debtor and against the objector to discharge. Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007), aff'd, 578 F.3d 1167 (9th Cir. 2009) (citation omitted). The objector to discharge bears the burden to prove by a preponderance of the evidence that the debtor's discharge should be denied under an enumerated ground of § 727(a). Id. (citation omitted).

Section 727(a)(2)(A) provides that the bankruptcy court may deny a debtor's discharge if the debtor disposed of, or permitted the disposal of, his or her property with the intent to hinder, delay, or defraud a creditor, within one year prior to the petition date. The objector to discharge under § 727(a)(2)(A) must prove two things:  (1) a disposition of property, whether by transfer, removal, destruction, mutilation, or concealment (within the one-year period); and (2) the debtor's subjective intent to hinder, delay or defraud a creditor through the act of disposing of the property. In re Retz, 606 F.3d at 1200 (citation and quotation marks omitted).

-23-

The only argument YJ offers here, at best, is that the bankruptcy court erred in finding that Adams LLC and the Adams Property were Mrs. Kong's separate property, so therefore Mr. Kong could not have transferred any alleged interest he had in either property within one year of the petition date. As we noted above, Mr. and Mrs. Kong's testimony on this issue was uncontroverted. YJ offered only legal argument and speculation to refute it. Therefore, the bankruptcy court's findings are not illogical, implausible or without support in the record. TrafficSchool.com, 563 F.3d at 832.

## VI. CONCLUSION

Based on the foregoing, we AFFIRM.